William B. Irish *v.* Samuel Johnston, Treasurer of Allegheny County, for the use of Rachel Impey.

1. The legal right to recover on a bond, given by a purchaser for the surplus price bidden by him at a tax-sale, is in the county treasurer named in it as obligee, and not in those who are entitled to the money.

2. In a suit upon such bond, the obligor cannot contest a use-plaintiff's ownership of the land at the time of the sale.

3. Nor can he set off arrears of ground-rent, accrued before the sale, which issued out of the land, and which such use-plaintiff was bound to pay as the assignee of the ground-tenant,—such liability being founded not on privity of contract, but on privity of estate.

Error to the District Court of Allegheny.

*Sept.* 15. On the 15th June, 1842, Irish purchased at a tax-sale of unseated land, an unseated part of lot No. 111, in Fourth Ward, Pittsburgh, in the name of Rachel Impey. The price he bid for it was $1,505, of which $14.38 were paid in full of the taxes and costs, and on 21st July, 1842, a bond was given, agreeably to the act of Assembly, to Johnston, the treasurer of the county, and to his successors, for the balance of the purchase-money, $1,490.62, for the use of the owners of the land sold.

On the 23d January, 1847, judgment was confessed on that bond, for the penalty by virtue of a warrant of attorney, to be released on payment of the real debt, with interest from 1st April, 1845, and the costs in No. 252, Ap. T. 1846. Subsequently this judgment was opened on terms, and the defendant was let into a defence. The defendant pleaded, that at the time of the sale Rachel Impey was not the owner of the land; that at that time he

was himself the owner, *absque hoc*, &c.; that she was not the sole owner, and *non est factum*, and set-off. The plaintiff traversing these several pleas generally, the cause came on to be tried before Judge LOWRIE.

The evidence of the plaintiff was this. The bond: a perpetual lease of the land sold, granted by Nathaniel Irish to Abraham Long, subject to a ground-rent of $45 per annum, dated 30th December, 1812: proof of the death of Long, and who were his heirs: deeds to plaintiff by two of those heirs, Frederick Long for one-fourth of the land, dated 10th October, 1831, and Sarah Midford for another fourth, and for any contingent interest that might accrue to said Sarah from any of the heirs of Abraham Long, dying without issue and intestate, dated 24th December, 1831; and a deed by Abraham Long, Jr., another of those heirs, to George Watson, for another fourth. Rachel Watson, the plaintiff, was married to Impey in 1834, and was divorced from him in 1844.

The evidence of the defendant consisted of the will of Nathaniel Irish, dated September 4, 1816, devising the above-mentioned ground-rent to the defendant, subject to a life-estate of Ann M'Cully in the same, who died in 1820

The rebutting evidence of the plaintiff was to establish the fact that in 1842 George Watson went on the property for her, to make tender of the ground-rent, and that there was nobody there to receive it. She also gave in evidence another will of Nathaniel Irish, dated in 1813, proved in 1848, wherein he devised this ground-rent to one Anne Shaw, who conveyed it to the plaintiff by deed, dated 4th January, 1845.

The plaintiff requested the court to charge, that the ground-rent due before the treasurer's sale, cannot be set off by the purchaser in an action against him upon his surplus bond.

The defendant requested the court to charge, that the defendant is entitled to a verdict in his favour on the first plea by him pleaded, unless the plaintiff has proved to the satisfaction of the jury that Rachel Impey was the owner of the ground, in the said plea mentioned, at the time therein mentioned, and that if George Watson was, at the time aforesaid, the owner of an undivided interest in said ground, the defendant is entitled to a verdict in his favour, on said plea.

The court refused so to charge, and reserved the questions to be decided after the facts were found by the jury.

Charge of the Court.—" Under the deed of Sarah Midford to Rachel Watson, the plaintiff is entitled, as against William B. Irish

in this case, to any additional title accruing to Mrs. Midford, by the death of an heir of Abraham Long, after the date of said deed, and before the purchase at the treasurer's sale."

The jury found for the plaintiff on the first plea, that Rachel Impey was the owner of two-thirds of the premises referred to—and they also found for the plaintiff on the second and fourth pleas, and on the *third* plea for the defendant—on the plea of set-off, they found that two-thirds of the ground-rent due to the defendant, on the lot, at the time he became purchaser at the treasurer's sale, were three hundred and fifteen dollars, but whether the same was a proper subject of set-off, they submitted to the court. June 5, 1849, questions on the reserved points decided in favour of the plaintiff, and judgment entered in favour of plaintiff, Samuel R. Johnson, for the penalty of the bond, to be released on payment of the real debt, $1,490.62, with interest from April 1, 1846, with leave to Rachel Impey to take out execution for $993.74, with interest from April 1, 1846.

The errors assigned here were :—

1. That the court erred in refusing to charge the jury as requested by defendant's counsel.

2. The court erred in charging the jury *ut suprà*.

3. The court erred in deciding, upon the special finding of the jury, that the two-thirds of ground-rent due to the defendant below on the lot, at the time he became purchaser at the treasurer's sale ($315), was not a proper subject of set-off in this action.

4. The court erred in entering judgment generally, on the verdict of the jury, in favour of the plaintiff.

*Mahon* and *Washington*, for the plaintiff in error.—1. Suit on a surplus bond should be brought for the use of all interested in the surplus money; or, if brought for one having a fractional interest, that interest should be specified. Where the suit is brought for the use of one, an entire interest should be established in that one : proof of interest in others defeats the action : Act 3d April, 1804, §§ 2 and 4, sale of unseated lands; § 1, act of 4th April, 1809.

2. Sarah Midford's deed is a mere release as to any contingent interest that might accrue to her, and not a conveyance of it : Coke Litt. vol. 2, 265, § 446; 11 Ohio Rep. 475; 14 Johns. Rep. 193.

3. By the conveyances to her, the plaintiff became liable to pay the defendant a proportion of the ground-rent equal to her interest

in the land. The portion was $315 up to the sale by the treasurer, and that was a proper set-off. A debt to or from the *cestui que trust* may be set off in an action against or by the trustee in right of the trust: Wolf *v.* Beales, 6 S. & R. 244.

*Williams* and *Kuhn*, contrà.—1. There can be but one judgment on a bond with a penalty, and the plaintiff as "an owner" was entitled to a verdict: Adams *v.* Bush, 5 W. 289. Any one equitably interested, whether as owner at the time of sale, or as heir, could bring suit on such a bond without seeking out the other owners. One is not bound in such case to spread on the record how much of the title is in him. The defendant, obligor, could not be affected in any way—even by a wrong distribution of the money: § 5, act of 1804, Dunlop, 175. The beneficial parties need not appear—the legal parties are sufficient: Reigart *v.* Ellmaker, 6 S. & R. 44; Armstrong *v.* Lancaster, 5 W. 68; Commonwealth *v.* Lightner, 9 W. & S. 117. If the first and third plea were identical, as it is said, then the third plea raised an immaterial issue, and would have been bad even after verdict: 1 Chit. Pl. 654; 4 Wash. C. C. R. 678.

2. This error is answered by the reasoning and authorities applicable to the first.

3. The set-off could not be allowed. The defalcation act, Dunlop, 17, applies only when "the defendant cannot gainsay the deed, bargain, or assumption on which he is sued"—and here the pleadings are intended to gainsay our demand: Sparks *v.* Garrigues, 1 Binn. 161.

The purchaser at a tax-sale takes the land subject to the payment of the reserved rent: Irvin *v.* U. S. Bank, 1 Barr, 349. That makes the land bring so much the less, and this is an attempt to get a second advantage of the ground-rent by way of set-off. But the lien of this rent became extinct on the union of the two estates in Irish: Phillips *v.* Bonsall, 3 Y. 128; 2 Binn. 192. So with the lien of a judgment: Koons *v.* Hartman, 7 W. 20; Wright *v.* Knepper, 1 Barr, 361. Rachel Impey could only be sued by reason of the privity of the estate, which was destroyed by the sale.

The court will not interfere where a judgment is entered on a bond, except it appears that the wrong parties are seeking the benefit of it: Humphreys *v.* Rawn, 8 W. 78. The court will not exercise its power to set off mutual claims on distribution of pro-

ceeds of sheriff's sale, unless the parties have judgment against each other: Cornwell's Appeal, 7 W. & S. 305.

The opinion of this court was delivered by

GIBSON, C. J.—There are but two points before us: 1. The obligor's right to contest Mrs. Midford's former ownership of any part of the land, for the surplus price of which the bond was given. 2. His right to set off the ground-rent which issued out of it, and which she was bound to pay as the assignee of the ground-tenant.

1. The legal right to recover on the bond was in the treasurer named in it as obligee, and not in those who were entitled to this money. What had the obligor to do with them or their *aliquot* parts of it? A recovery in the name of the obligee without disclosing the interests of the equitable parties, would discharge him from liability to any one, and he could ask no more. The obligee would be answerable to them as their trustee for the money when recovered; and payment to the sheriff on the foot of an execution, would be enough for all parties. In the analogous case of Coxe v. Blanden, 1 W. 533, a stranger in possession was not suffered to set up as a defence to an ejectment by the grantee of a trustee, that the grant was in fraud of the trust. In a pure action at law, a legal title is always a ground to recover, and no more ought to be set out in the pleadings; yet, in some instances, a fiduciary interest has been gratuitously traced from the legal plaintiff which invited, as might have been expected, the defendant there as here, to meddle with questions that did not belong to him, and involved the plaintiff in unnecessary difficulties; but this jumbling together of legal and equitable titles in the same action, springs not from any legal necessity, but from the pleader's ignorance of the nature of an action at the common law. By this course, however, these fiduciary interests have always been disregarded in the pleadings, as they were in Armstrong v. Lancaster, 5 W. 67, and Pierce v. M'Keehan, 3 Barr, 136; the latter of which shows how perilous it is for a plaintiff to suffer himself to be decoyed into an issue on his equitable right to bring the action. If the beneficial ownership were the ground of it, a bond for the use of several could not be sued without the consent of all; or if it were sued at the instance of one for his separate share, as only one action of debt can be maintained on a bond, and one judgment and execution be had, the common security would be exhausted by the first beneficial claimant who put the remedy on it in motion. To prevent this, in the case of certain official bonds, the legislature allowed a cautionary judgment to be rendered for the penalty, the

separate damages of the party suing being assessed at the same time, and the damages of those to follow being left for writs of *scire facias;* at other times, it allowed actions of debt to be repeated on the same bond *toties quoties.*  But no such provision has been made for the bond of a purchaser for surplus tax-money; and the consequence is, that when the land sold was owned by several, they must litigate their disputes for their respective parts of it when the money has been brought into court.  To give notice to the sheriff not to pay it over to the legal plaintiff, it is enough to mark the suit to the particular use; and to protect the obligor from a vexatious stirring of it, it is enough that the court has power to restrain it.  It was immaterial, therefore, whether Sarah Midford, for whom it is prosecuted, was the owner of the whole or a part of the land. If she had an interest in the land, however small, she had a right to have it sued; if she had not, the court might have been moved to quash or stay the writ, but not to entertain a defence that might lead to a verdict and judgment against those who had.

2. The ground-rent could not be set off, for a very sufficient reason.   There was no set-off at the common law; and our statute allows it only between parties who stand in privity of contract. "If two or more dealing together," it is said, "be indebted to each other on bonds, bills, bargains, promises, accounts, or the like, and one of them commences an action in any court of this province, if the defendant cannot gainsay the deed, bargain, or assumption on which he is sued, it shall be lawful for such defendant to plead payment of all or any part of the debt or sum demanded, and give any bond, bill, receipt, account, or bargain in evidence."   What dealing together had the obligor and obligee in relation to this ground-rent?   The assignee of a bond, or the endorsee of a bill or note, may doubtless set it against a demand by the obligor or drawer without having had any transaction with him; but such assignee or endorsee stands in the place of the assignor or endorser as the transferree of a right growing out of a personal responsibility, with all the qualities adhering to it which were attached to it in the hands of the original holder of it.   Not so the grantee of a ground-tenant's estate.in fee-simple, who, instead of acquiring an interest in the grantor's right against the ground-landlord, incurs a liability to him, founded not upon privity of contract, but on privity of estate.   The assignment of even a lease for years, was not clogged at common law with liability.to an action of covenant by the landlord for payment of the rent; for no man who has not sealed the deed can be thus sued.   The assignee's liability arises, not from a

quality attached to the person of the assignor, but from a quality attached to the term ; for it has been held since Walker's case, 3 Rep. 23 a, that there is no personal privity between him and the lessor, whose common-law action against him was not covenant on the lease, but debt on the relation between them.   The 32 H. 8, c. 34, gives the lessor an action of covenant; but it was determined in Lewis v. Ridge, Cro. Eliz. 863, that it does not extend to covenants in a conveyance in fee or in tail.   Indeed, it was enacted expressly in relation to leases for life or for years, and for the benefit of reversioners.   The only precedent for an application of it to a covenant on a ground-rent deed, if precedent it may be called, is Weidner v. Foster, 2 Pa. R. 23, in which, however, the matter passed *sub silentio*, the point having been neither raised nor decided. The ground-landlord's action, therefore, is debt, and it barely sounds in contract.   But even if the statute gave him an action of covenant, being founded on a statute and not on privity of contract, it would not create that dealing together which is required by our defalcation act.   For this reason, arrears of ground-rent cannot be set off against a demand of an assignee of the ground-tenant.

Judgment affirmed.