## Commonwealth, for the use of Shaffner's Administrator, *versus* Rogers.

1. When an executor gives bond to the Commonwealth under an order of the Orphans' Court, upon an application charging him with mismanagement, the legatees acquire a vested interest in it as much as if it had been given directly to them.

2. After the bond has been given, the power of the court over it ceases; the court cannot release it after it has been given.

3. A decree annihilating a party's rights without notice, is simply void.

4. At the time a bond with surety was given by an executor, he gave a judgment for indemnity to his surety; an execution was issued on the judgment and the money without sale paid to the sheriff; the Court of Common Pleas directed it to be distributed—to a debt due from the executor to his surety, to two legatees for their legacies and the balance to the executor, leaving one legatee unpaid. *Held,* that this was not satisfaction of the bond.

5. The judgment given for the indemnity, if it enured to the benefit of the legatees, was but collateral to the Orphans' Court bond, and they were not bound to follow it.

ERROR to the Court of Common Pleas of *Fayette county*.

This was an action of debt at the suit of the Commonwealth to the use of the administrator, &c., of Jacob Shaffner, deceased, against Thomas Sloan and Robert Rogers. The writ issued July 14th 1858, and was returned "summoned" as to Rogers, and "nihil" as to Sloan. Philip Shaffner died in May 1844, having made his will, proved on the 31st day of that month, by which he gave the residue of his personal estate to his four children, Catharine, wife of Thomas Sloan, Mary Ann, wife of Charles Greenawalt, Jacob and Alfred; he also directed the residue of his real estate to be sold, and gave one-fourth to each of his daughters Catharine and Mary Ann, and gave " one-fourth thereof to my son Jacob in manner following, that is to say: the said one-fourth is to be put out on interest by my executors, who are hereby required to pay over annually to my son Jacob the interest arising

[Commonwealth *v*. Rogers.]

from said one-fourth during his lifetime, and at his decease then to distribute the said one-fourth equally among the children of my said son Jacob."

The other fourth he gave for the benefit of his son Alfred, and appointed Thomas Sloan and Charles Greenawalt executors of his will. Greenawalt renounced, and letters testamentary were granted to Sloan alone.

On the 3d of March 1845, Alfred presented a petition to the Orphans' Court, charging that Sloan was wasting and mis-managing the estate, and praying that Sloan might be required to give security or be dismissed.

On the 6th of June 1845, the court directed Sloan to give security in the sum of $8000. He accordingly, on the 7th day of July, filed a bond with Rogers the defendant as his surety in the sum of $8000—conditioned that Sloan as " executor of the last will and testament of Philip Shaffner, deceased, shall well and truly discharge the trust as executor as aforesaid, and shall well and truly pay over all moneys that may come to his hands as executor as aforesaid, according to the directions contained in the will of the said Philip Shaffner."

The bond was approved by the court and filed.

On the same day a judgment was entered in the Court of Common Pleas of Fayette county by confession, in favor of Robert Rogers against Thomas Sloan and William Baker as his surety in the sum of $8000—conditioned to indemnify Rogers as surety for Sloan in the bond given by order of the Orphans' Court.

On the 2d of June 1846, Thomas Sloan petitioned the Orphans' Court, that Rogers might be discharged as surety and another surety substituted.

Sloan's account as executor was confirmed September 10th 1846, showing in his hands a balance of $13,337, of which $10,255.76 were the proceeds of the real estate.

An execution was issued to December Term 1846, on the judgment of Rogers against Thomas Sloan, and on the 21st of January 1847, before the day of sale, $8506, the debt and interest, were paid to the sheriff.

In March 1847, the declaration of the assent of Sloan and his wife to the substitution of William Sloan as Thomas Sloan's surety in place of Robert Rogers, was filed in the Orphans' Court. By this they bound themselves that in case such " security should eventually prove inadequate to protect all of said legatees, that the claims which we or either of us and our heirs, executors and administrators may have upon the same, shall be postponed to the claim of the said other legatees, or their heirs and legal representatives."

Greenawalt and wife also gave their assent to the substitution

[Commonwealth *v.* Rogers.]

of William Sloan for Rogers. The following declaration of Alfred was, at the same time, filed :—

"I, Alfred P. Shaffner, for myself and my brother Jacob Shaffner, do hereby declare my and his assent to the substitution by the Orphans' Court of Fayette county, Penna., of the bond of Thomas Sloan and William Sloan for that of Thomas Sloan and Robert Rogers—as security for the faithful performance, by Thomas Sloan, of the duties of executor of the last will and testament of Philip Shaffner, deceased."

The bond of Thomas and William Sloan, conditioned that "Thomas Sloan, executor of the last will and testament of Philip Shaffner, deceased, shall well and faithfully do and perform all and singular the duties and trusts to the said office appertaining," was, March 8th 1847, "approved and accepted in lieu of the bond of the executor, with Robert Rogers as security, which is released."

On the same day the court made the following order :—" The defendant, Thomas Sloan, having, by the substitution of another bond, released the plaintiff from his suretyship as executor of Philip Shaffner, deceased, that the money in the hands of the sheriff he shall dispose of as follows : 1st. That he pay into court $867.65, an amount claimed by plaintiff. 2d. Pay to William Barkman, attorney in fact of Charles Greenawalt and wife, $1386.46. 3d. Pay Alfred P. Shaffner $1838.71. 4th. Pay the residue to Thomas Sloan."

By the testimony of Alfred Shaffner, it appeared that he had no authority to give the assent of Jacob Shaffner to the substitution of William Sloan for Rogers.

Thomas Sloan was afterwards, May 6th 1857, discharged from the executorship.

On the trial the record of Rogers's judgment and the proceedings under it, as before stated, were offered in evidence by the defendant and objected to by the plaintiff, but received by the court and exception taken.

The court (Gilmore, P. J.) to the jury, charged :—"I am of opinion, and so instruct you, that the plaintiff is not entitled to recover.

"The Orphans' Court, on a proper application or suggestion, have full and exclusive authority to take such a bond as is now in suit, and to hold it for the purposes expressed in its defeasance. That jurisdiction also comprehends *the right to release the bond, or substitute another in its stead, and we think this may be done without a citation to the parties interested in the bond.* The taking of the bond and its approval is purely the act of the court. The instrument is brought into being by the *fiat* of the court, as a guarantee for the faithful performance of a trustee acting under the jurisdiction of the court. This power

[Commonwealth v. Rogers.]

to compel such a guarantee, implies a corresponding power to change, enlarge or entirely release it. If the court were bound to give notice of intention to change a security to all interested, the delay it might occasion would in some instances work to the prejudice of those for whose benefit it was intended. The bond is merely auxiliary to the court, enabling them to enforce a faithful discharge of duty. To what purpose should those interested be summoned? The power of the court could neither be enlarged or limited, delayed or hastened, by their assent or dissent. It is the province and duty of the court to see that her trustees act with fidelity, and from this duty she cannot be released. Their action in this respect is independent of all." * * * *

"In this case we have also the fact that the whole amount of the bond was brought into court by the surety. The court was informed as to the nature of the fund, and they undertook to distribute it. In doing so, they made a decree discharging the bond. It was the right of the surety to have it discharged. He would have no other object in causing the money to be brought into court, than a release of his obligation. His judgment of indemnity by the proceeding had been extinguished, and it was not his fault if the money was disposed of by the court so as eventually to occasion loss. The principal, Thomas Sloan, would have had a right to the cancellation of this bond upon bringing the money into court; and we cannot see why the surety is not entitled to the same privilege."

There was a verdict for the defendant, October 12th 1864. The errors were the admission of the evidence objected to, and charging that the plaintiff was not entitled to recover.

*D. Kaine*, for plaintiff in error, cited Newcomer's Appeal, 7 Wright 43; Act of March 29th 1832, §§ 22, 28, Purd. 305, 307, pl. 202, 209, Pamph. L. 194, 197; McKee v. McKee, 2 Harris 237; The Mary, 3 Peters' Cond. R. 35; Commonwealth v. Greene, 4 Wh. 568; Ege v. Sidle, 3 Barr 124; Ragan's Estate, 7 Watts 440; Jackson v. Brown, 3 Johns. R. 459.

*J. Veech*, for defendant in error, cited Newcomer's Appeal, 7 Wright 43; Erb's Appeal, 2 Penna. R. 296; Himes v. Barnitz, 8 Watts 45; Gardner's Appeal, Moore's Appeal, and Cornwell's Appeal, 7 W. & S. 295, 298, 305; Carman v. Noble, 9 Barr 366; Kramer & Rahm's Appeal, 1 Wright 75; Hatz's Appeal, 4 Id. 212.

The opinion of the court was delivered, January 7th 1867, by
STRONG, J.—When Thomas Sloan, the executor, in obedience to the order of the Orphans' Court, gave his bond, with Robert Rogers as his surety, the legatees under the will of Philip Shaff-

ner acquired a vested interest in the bond. It became in equity theirs, as much so as if it had been given directly to them. Pursuant to the directions of the will, the executor had sold the real estate, and he held the proceeds of sale in part for immediate distribution among some of the legatees, and in part for investment, and ultimate payment to other legatees, among whom were Jacob Shaffner and his children. By the express directions of the Act of Assembly under which it was taken, the bond was a security to the legatees, in which they, and they alone, were interested. The Act of March 29th 1832, § 22, enacts that a bond, taken as this was, shall be deemed and considered in trust for the benefit of all persons interested in the estate. It is true the Orphans' Court was the instrument by which the bond was obtained. The executor gave it in order to avoid being dismissed from his trust, and it was approved by the court. But when that was done, the power of the court over it ceased. It is not, as was thought by the court below, implied in the power to compel an executor to give a bond, that the court can release it after it has been given. The parties in interest may, but without their consent, the obligors cannot be discharged by anything less than compliance with its conditions. It was a serious mistake of the court below to treat such a bond as only a guaranty to the Orphans' Court. It is as much a security to the legatees as is a recognisance in partition to secure to an heir his share of the valuation money a security to that heir. The court misapprehended, therefore, the power of the Orphans' Court over the bond given by Sloan and Rogers. That court had no authority to do what it attempted to do in 1847, namely, to release the bond and discharge the surety without the consent of all the parties in interest. The Act of Assembly gives no such authority, and it is inconsistent with the declared uses and ownership of such a security. So it was decided in Newcomer's Appeal, 7 Wright 43. The bond in that case was given by a guardian, and the power of the Orphans' Court to cancel it and substitute another was denied. It is probable that when the court directed the release of the bond now in suit, it was misled by a misrepresentation of facts. It was Sloan himself, the obligor and executor, who presented a petition praying that the bond might be released, and another bond substituted. At the same time he presented written declarations of three of the four persons interested in the fund he held, consenting to the proposed release and substitution, and also an unauthorized consent by one of them for the fourth. It was in reliance, doubtless, upon these declarations that the court declared the bond released. In fact, however, Jacob Shaffner, to whom the interest of one-fourth of the fund had been bequeathed, with a bequest to his children after his death, had never consented, nor authorized any one to consent for him.

Nor had his children consented, or any one pretended to consent for them. Neither he nor they were present when the entry of a release was made. They were unrepresented, and they had no notice. Jacob Shaffner was not, therefore, bound by any action of the court in the premises, and so far as he and his children are concerned, the release of the bond was an entire nullity. Until it can be shown that he had no interest in the security, a decree of the court annihilating his rights, made without notice to him, must be regarded as simply void. And this, even if the court had possessed the power to release the bond after due notice: McKee v. McKee, 2 Harris 237, and cases there cited. It was here that the first error of the court below, in the trial of the present case, was made. It was in holding that the jurisdiction of the Orphans' Court comprehended the right to release the executor's bond, or substitute another in its stead, without notice to the parties interested in it, and without their consent. This was a fatal error. Unless, therefore, the defendant had a defence in the other branch of the case, the court should have affirmed the plaintiff's point, and instructed the jury that he was entitled to recover.

The other branch of the defence arises out of the following facts:—Contemporaneously with the execution of the bond upon which this suit was brought, Sloan gave a judgment-bond to Robert Rogers, for an equal sum, and with William Baker as his surety. It was given to indemnify Rogers for becoming bound with him in the bond required by the Orphans' Court. Judgment was entered upon it, an execution was issued, and the money was paid to the sheriff. The Court of Common Pleas, out of which the execution issued, then made the following order: "March 8th 1847. The defendant, Thomas Sloan, having by the substitution of another bond released the plaintiff from his suretyship, as executor of Philip Shaffner, deceased, that the money in the hands of the sheriff he shall dispose of as follows:—1st. That he pay into court $867.65, an amount claimed by the plaintiff; 2d. Pay to William Barkman, attorney in fact of Charles Greenawalt and wife (who was one of the legatees) $1386.46; 3d. Pay to Alfred Shaffner (another legatee) $1838.71; 4th. Pay the residue to Thomas Sloan." This the court below thought amounted to satisfaction of the bond given by Sloan and Rogers in the Orphans' Court, even if it was not released. It is to be noticed that the money raised by the execution was not paid into the Orphans' Court and distributed there. It was not even paid into the Common Pleas. It is further to be observed that neither Jacob Shaffner nor his children had any notice of the appropriation which the Court of Common Pleas directed. They were no parties to it, and they were not bound by it. It is remarkable also, that more than half the entire sum was retained by Thomas

[Commonwealth *v.* Rogers.]

Sloan, the executor, and $867.65 taken by Rogers, his surety, for a debt due to him from Sloan. Most extraordinary would it be, if this transaction could be considered a discharge of the bond which Sloan and Rogers gave in trust for the parties interested in the estate of the testator. It cannot. An executor and his surety cannot thus release themselves from the obligation of their bond, given to secure the faithful performance of the executor's trust. They cannot thus destroy a security made for the benefit of the legatees. If they could—if an executor or an administrator, by paying to his surety a sum equal to the amount of their bond, or by giving to him a counter security, on which the amount may be raised and brought into a Court of Common Pleas for distribution, could release himself and his surety from the obligation of the bond they have given—it is idle for an Orphans' Court to exact security from a defaulting trustee. The security is at the mercy of the obligors. Let it be, as argued, that the counter security given to Rogers enured to the benefit of the legatees named in Philip Shaffner's will, that they had a right to control it. What then? It was collateral to the bond given in the Orphans' Court. The legatees were not bound to follow it. They were not compellable to look beyond the security taken for them by the Orphans' Court, and consequently, if the collateral does not avail for them without any fault of theirs, they do not lose the protection of the principal.

The condition of the bond that Sloan and Rogers gave in the Orphans' Court was, that Sloan should well and truly discharge his trust as executor, and pay all money that might come to his hands, according to the directions of the will of his testator. But his duty under the will was not performed until he paid to *Jacob Shaffner* the legacy given him, and paid to *Jacob's children* their legacies. What occurred in the Common Pleas was no compliance with this condition of the bond. It was therefore no satisfaction. Sloan was bound to see that the money was properly applied, and neither he nor Rogers can escape by taking the money themselves, especially when they took it without notice to the legatees.

There is, then, no defence to the plaintiff's claim in this part of the case, and none in any part; and it was error to charge the jury that the plaintiff could not recover. As the case appeared, he was entitled to a verdict. The judgment of Rogers *v.* Sloan and Baker, and the subsequent proceedings thereon, were quite immaterial.

Judgment reversed, and a *venire de novo* awarded.