## Commonwealth ex rel. v. Ortwein et al.

*Charles J. Margiotti*, Attorney General, and *Harry Polikoff*, Special Deputy Attorney General, for plaintiff. *Groman & Rapoport*, for defendants.

WICKERSHAM, J., December 21, 1936.—This case comes before us on an affidavit of defense raising questions of law upon which a rule was granted requiring the Commonwealth of Pennsylvania to show cause why the said suit should not be dismissed and service of the summons and statement of claim be set aside as to defendant George Ortwein, for the reason that the court herein has no jurisdiction. This petition raises the question of the jurisdiction of this court to entertain plaintiff's action.

It appears from the pleadings that defendant desired to obtain a milk dealer's license ending April 30, 1934, and also desired to obtain a milk dealer's license for the period beginning May 1, 1934, and ending April 30, 1935, at Fourth and Williams Streets, Bethlehem, in the County of Northampton, under the provisions of the Act of January 2, 1934, P. L. 174, known as the Milk Control Board Law. Defendant filed with his petition a bond in the amount of $1,600, with the Fidelity and Casualty Company of New York as surety.

It is alleged in plaintiff's statement, inter alia, that defendant George Ortwein, after filing said bond, received a milk dealer's license authorizing him to do business as a milk dealer in the Commonwealth of Pennsylvania during the year from May 1, 1934, to April 30, 1935; that he did not fully and faithfully observe the provisions of the act of assembly, and did not promptly pay all amounts due to producers for milk sold by them to him subsequent to the posting of the said bond; that he failed and refused to pay milk producers under the provisions of said act of assembly for milk delivered by them to him from April 1, 1934, to November 30, 1934, in the amount of $2,916.69, or any part thereof; that at a hearing before the Milk Control Board defendant admitted underpayment to milk producers and that he was in default in the said sum above mentioned, whereupon the Commonwealth commenced this action against defendants to recover the amount of said bond.

In answer to this action, defendant Ortwein filed his petition, alleging, inter alia, that since this suit is not a suit to recover money due and owing to the Commonwealth of Pennsylvania, and since also the Commonwealth is not a proper party plaintiff in this case, the court does not have jurisdiction to entertain the action under the provisions of the Act of April 7, 1870 P. L. 57, since defendant was not personally sued and served with summons and statement of claim within the County of Northampton, where he resides. Later defendant filed an affidavit of defense raising questions of law similar to those in the petition just above referred to.

To the said petition to set aside service, the Attorney General has filed an answer praying that the court discharge the rule to show cause why the present suit should not be dismissed.

### Questions involved

1. Where a statute provides that a milk dealer file a bond "upon a form prescribed by" the Milk Control Board, and such board prescribes a form in which the Commonwealth is designated as obligee, may suit thereon be brought by the Commonwealth, on the relation of the Attorney General?

2. In an action by the Commonwealth upon a bond executed to the Commonwealth by a milk dealer for the benefit of milk producers, may suit be commenced under the Act of April 7, 1870, P. L. 57, against an individual defendant not residing in Dauphin County?

3. In an action upon a milk dealer's bond, is it necessary to allege the names of the milk producers intended to benefit thereby, and the amounts due to each, or to allege that the board has issued a formal order assessing such amounts?

### Discussion

It will be observed that the bond itself is executed to the Commonwealth. We think, therefore, the Commonwealth, being the obligee, is the proper person to bring suit on this

bond. The question before us is not whether the milk producers or the Milk Control Board can sue upon this bond, but whether they or it may sue upon an instrument.

Paragraph G, sec. 12, of the Act of January 2, 1934, P. L. 174, 186, provides: "The board shall have the power in its discretion, to sue on the bond on behalf of producers."

There is no provision in this act to prevent the board from bringing suit in the name of the Commonwealth, ex rel. the Attorney General, upon this bond, which is executed to the Commonwealth. The statute does not prescribe in whose name suit shall be brought. The proper procedure, therefore, is to place the obligation with the Department of Justice for collection, as provided in section 903 (a) of The Administrative Code of April 9, 1929, P. L. 177, as amended, which provides:

"The Department of Justice shall have the power, and its duty shall be:

"(a) "To collect, by suit or otherwise, all debts, taxes, and accounts, due the Commonwealth, which shall be placed with the department for collection by any department, board, or commission."

Section 206 of the code prescribes that the Attorney General shall exercise the powers and perform the duties by law vested in the Department of Justice. It therefore follows that the present action was properly commenced in the name of the Commonwealth.

As we have above stated, the bond is executed to the Commonwealth as obligee, and suit has been commenced in the name of that obligee, the Milk Control Board, in its discretion, having seen fit to bring such suit in the name of the Commonwealth, the obligee, through the Commonwealth's chief law officer; and we think nothing in the statute law of the Commonwealth forbids the present suit from being commenced in that way. Although the Milk Control Board Law states that the board shall have the power to sue, this certainly was not intended to repeal The Administrative Code, and certainly does not prevent the

board from prescribing a form (see section 12-A), in which the Commonwealth is named as obligee.

As the question of jurisdiction is primarily before us, we think this court has jurisdiction under the Act of March 5, 1925, P. L. 23. See Reeser's Milk Co. v. Pates et al., 320 Pa. 11; Welser v. Ealer, 317 Pa. 182. In Reeser's Milk Co. v. Pates it was held:

"The purpose of the Act of March 5, 1925, P. L. 23, is to enable a defendant to have determined preliminarily whether the court of first instance lacks jurisdiction either over the defendant personally or over the cause of action involved in the suit. . . .

"Jurisdiction over the 'cause of action', as that expression is used in the statute, has reference solely to the competency of the particular court to determine controversies of the general class to which the case then presented for consideration belongs."

The Court of Common Pleas of Dauphin County was held to have jurisdiction over a bill in equity by a milk dealer against members of the Pennsylvania Milk Control Board to enjoin enforcement of the Act of April 30, 1935, P. L. 96, on the ground that the act is unconstitutional, and the order dismissing the petition under the Act of 1925, supra, questioning the jurisdiction of the court, was affirmed on appeal.

If this court has jurisdiction over a bill in equity by the milk dealers against the Pennsylvania Milk Control Board it must necessarily follow that we have jurisdiction to entertain an action on a bond posted by a milk dealer in which the Commonwealth is the obligee; and it makes no difference whether the milk dealer resides in Dauphin County or elsewhere.

Under the Act of April 7, 1870, supra, the Court of Common Pleas of Dauphin County has jurisdiction of all cases in which the Commonwealth sues in her own right, even though at her own option she may also sue in courts of common pleas of other counties: Commonwealth ex rel. v. Wilkins et al., 271 Pa. 523. The purpose of this act clothing the Court of Common Pleas of Dauphin County

with State-wide jurisdiction in suits in which the Commonwealth is plaintiff is that the Commonwealth, when suing in her own right, shall be allowed to prosecute claims at the seat of government and not be required to go elsewhere.

The purpose of the Act of April 7, 1870, supra, was fully discussed in the case of Commonwealth, to use, v. County of Philadelphia, 193 Pa. 236, in which it was held that under said act, giving this court extraterritorial jurisdiction in suits in which the Commonwealth is plaintiff, the court has no jurisdiction to entertain a case in the name of the Commonwealth to the use of the State Hospital for the Insane against a municipality for the maintenance of the insane poor, as the Commonwealth is not the proper plaintiff, nor is it the real or beneficial party to the action, but the claim is due the hospital, which must sue in its own name. We think this case is not controlling, for the reason that the bond, a copy of which is attached to plaintiff's statement, is not given to the Commonwealth of Pennsylvania for the use of the Milk Control Board. We quote from the bond, after naming the surety: "are held and firmly bound unto the Commonwealth of Pennsylvania in the maximum aggregate sum of" $1600 "to be paid to the said Commonwealth, its certain attorney or assigns . . ." The wording of this bond, therefore, differs from the bond in the case from which we have just above quoted. The bond in the instant case is a bond direct to the Commonwealth, and to the Commonwealth only, and it is clearly distinguishable from Commonwealth, to use, v. County of Philadelphia, supra.

The bond was filed pursuant to the said Milk Control Board Law and recites that fact in paragraph 4. Section 12 (*g*) of the said Act of 1934 provides:

"The board may, by reasonable rule or regulation, provide the procedure for the payment, out of the bonds or security or securities required by this section, of the valid claims of producers based on sales by them of milk to the licensee who has posted the bonds or security or securities.

"Provided, however, That if the bond or security or securities which have been posted by a milk dealer shall be insufficient to pay in full the just claims of producers who have sold milk to such licensee, the moneys available shall be divided pro rata among them.

"The board shall have the power in its discretion, to sue on the bond on behalf of producers."

It is clear, therefore, that this money is not collected for the benefit of the Commonwealth or the board, but it is being collected for the benefit of those to whom it is allegedly indebted, according to the orders of the Milk Control Board. The Commonwealth, therefore, is in the position of a stakeholder or trustee holding the money, not for itself, but for the beneficiaries to whom it belonged under the law.

The contention of defendants rests upon the theory that since section 12(g) of the act provides that the board shall have the power to sue, it necessarily follows that the Commonwealth does not have the right to sue. The argument is also advanced that the producers should be named as parties plaintiff. The only case cited in the brief of defendants upon this point is Commonwealth, for the use, v. Rogers, 53 Pa. 470. This case merely held that the orphans' court did not have jurisdiction to release an executor's bond without the consent of the parties interested therein, and that the legatees had an interest; suit on the bond involved was brought in the name of the Commonwealth for the use of a legatee. It does not hold that suit in the name of the Commonwealth alone would have been dismissed.

The question before us is not whether the producers can bring a suit on this bond but whether the Commonwealth can be prevented from bringing this action in its own name, and the authorities referred to by counsel for defendant are not controlling. We think the Commonwealth cannot be prevented from bringing this action in its own name. "Where the bond is drawn to the obligee for the use and benefit of another, the latter cannot, in the absence of

statute, sue thereon in his own name, but the suit should be in the name of the obligee, although he has no beneficial interest in the bond": 9 C. J. 86.

The case of Irish v. Johnston, to use, 11 Pa. 483, is interesting. We quote from the opinion of Chief Justice Gibson, at page 487:

"The legal right to recover on the bond was in the treasurer named in it as obligee, and not in those who were entitled to this money. What had the obligor to do with them or their *aliquot* parts of it? A recovery in the name of the obligee without disclosing the interests of the equitable parties, would discharge him from liability to any one, and he could ask no more. The obligee would be answerable to them as their trustee for the money when recovered; and payment to the sheriff on the foot of an execution, would be enough for all parties. . . . In a pure action at law, a legal title is always a ground to recover, and no more ought to be set out in the pleadings; yet, in some instances, a fiduciary interest has been gratuitously traced from the legal plaintiff which invited, as might have been expected, the defendant there as here, to meddle with questions that did not belong to him, and involved the plaintiff in unnecessary difficulties".

The producers have no right to recover on this bond: Greene County, for use, v. Southern Surety Co., 292 Pa. 304, in which the law in Pennsylvania was settled to the effect that third party beneficiaries could not recover. This authority, however, was practically overruled by Commonwealth v. Great American Indemnity Co., 312 Pa. 183, which was largely influenced by the Act of June 23, 1931, P. L. 1181. Nothing in the Milk Control Board Law states that milk producers have a cause of action upon this bond. If the legislature intended milk producers to have a cause of action it could have so provided; however, the Commonwealth has a cause of action under this bond and producers should not be relegated to a doubtful position when the Commonwealth's right is so clear.

With respect to the second question involved, we say that inasmuch as the obligation runs expressly to the Commonwealth, the Commonwealth alone has a right to sue.

With respect to the third question involved, we refer to section 12 (*g*) of the Milk Control Board Law of 1934, supra, which we have hereinbefore quoted. This subsection does two things: first, it authorizes the board to provide the procedure for payment of claims of producers out of the bonds; and, second, it authorizes the board to sue on bonds. This power to sue, contained in the last lines of the section, rests entirely in the discretion of the board; by virtue of the express wording thereof the only condition precedent is that the board exercised its discretion, which is manifested when suit is brought.

The defendant surety contends that the board should allege in its statement of claim that a formal order had been issued by the board, specifying the names of, and the amounts due to, individual producers by the defendant milk dealer. Such a condition is not found in the Milk Control Board Law of 1934 under which the present suit was filed, and it is completely silent on the subject.

We are of opinion, therefore, that the Commonwealth is the proper party plaintiff in the present case, especially because the bond is so worded. Being a proper party plaintiff, it may bring a suit in Dauphin County against defendant, resident in Northampton County, under the Act of 1870, supra. When suit is brought under the terms of the bond, it is unnecessary to allege that the Milk Control Board has promulgated any formal orders specifying the names and amounts of the individual sureties, because the act permits suit to be brought in the discretion of the board whether or not such formal order has been issued.

And now, December 21, 1936, it is ordered, adjudged and decreed that the affidavit of defense raising questions of law is overruled and defendants are directed to file an affidavit of defense to the statement of claim on its merits within 15 days from the filing of this opinion.

From Homer L. Kreider, Harrisburg.