Commonwealth of Pennsylvania, Milk Marketing Board, Appellee, *v.* The Keystone Dairy Company, Appellant. Milk, Inc., Intervening Appellee.

Commonwealth of Pennsylvania, Milk Marketing Board, Appellee, *v.* The Ohio Casualty Insurance Company, Appellant. Milk, Inc., Intervening Appellee.

Argued March 4, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert W. Smiley,* with him *Smiley & McGinty,* and *Frank E. Coho,* for appellant, Keystone Dairy Company.

*Robert J. Stewart,* with him *Liverant, Senft & Cohen,* for appellant, Ohio Casualty Insurance Company.

*Howard D. Brooks,* Assistant Attorney General, with him *Walter J. Sullivan,* Assistant Attorney General, for appellee.

*Carroll F. Purdy,* with him *Metzger, Hafer, Keefer, Thomas and Wood,* for intervening appellee.

OPINION BY JUDGE MENCER, May 12, 1975:

We have before us two separate appeals by the Keystone Dairy Company (Keystone) and The Ohio Casualty Insurance Company (Ohio) from an order of the Pennsylvania Milk Marketing Board (Board) revoking Keystone's right to apply for a milk dealer's license for the year 1974-75 and forfeiting the corporate surety bond posted by Keystone with demand made upon Ohio, the corporate surety, to remit the full amount of the bond to the Board.

On or about May 24, 1974 and again on July 3, 1974, Keystone, a licensed milk dealer, was issued citations by the Board requiring Keystone to appear and show cause why the Board should not suspend or revoke its current milk dealer's license and should not suspend its right to apply for a milk dealer's license for the 1974-75 licensing year. Hearings were then held before a hearing examiner on June 24, 1974, July 9, 1974, and July 12, 1974,[1] after which the Board issued an opinion and order dated September 4, 1974. This opinion and order was subsequently amended and reissued on September 11, 1974. Keystone and Ohio both filed appeals from the Board's amended order, and we consolidated them for argument on Ohio's petition.

---

1. No appearances were made by Keystone or Ohio at the July 12 hearings.

Our review of both the record and the applicable law convinces us that the Board's revocation of Keystone's right to apply for a milk dealer's license was proper. Section 404 of the Milk Marketing Law[2] reads in pertinent part as follows:

"The board shall grant a license to an applicant complying with the provisions of this act and the rules, regulations and orders issued by the board pursuant thereto. The board *may decline to grant a license to an applicant, or may suspend or revoke the right of a licensee or former licensee to apply for a license for a new license period,* or may suspend, revoke or refuse to transfer a license already granted to a milk dealer or handler, or may prohibit a milk dealer or handler exempted from the license requirements of this act from continuing to operate as a milk dealer or handler, after determination by the board that the dealer or handler:

. . . .

"(2) *Has, if a milk dealer other than a subdealer, failed to account and make payment for any milk purchased or received on consignment or otherwise from a producer or producers,* or has, if a subdealer, failed to account and make payment for any milk purchased or received on consignment or otherwise from a milk dealer: *Provided,* however, That if it be shown that there was *reasonable cause* for any such failure to account and make payment, and that such accounting and payment can and will be made promptly in addition to currently accounting and paying for milk purchased or received as aforesaid, the board shall not refuse to grant or suspend, revoke

---

2. Act of April 28, 1937, P. L. 417, *as amended* by the Act of July 31, 1968, P. L. 963, §18, 31 P.S. §700j—404 (Supp. 1974-75).

or refuse to transfer a license solely for such failure to account and make payment, until a reasonable opportunity has been afforded to make such accounting and payment. . . ." (Emphasis added.)

The Board's amply supported findings of fact clearly disclose that Keystone violated the above section by failing to make timely payments for milk it purchased from Milk, Inc., a milk producers' cooperative.

Keystone does not really dispute the Board's findings of its failure to make payments for milk received. Instead, Keystone argues that the Board flagrantly disregarded the exculpatory proviso in subsection (2). Unfortunately, this argument must fail because, as revealed by our careful review of the record, Keystone never offered any evidence to show a "reasonable cause" for its failure to make payments for milk it had received.

Although we affirm that part of the Board's order revoking Keystone's right to apply for a milk dealer's license for the year 1974-75, we are compelled to set aside paragraph No. 2 of the Board's order which ordered the bond posted by Keystone forfeited and the full amount thereof remitted to the Board by Ohio. These directives are simply not within the statutory powers of the Board as enumerated in Sections 509, 510, and 511 of the Milk Marketing Law, *as amended* by Sections 30 and 31 of the Act of July 31, 1968, P.L. 963, 31 P.S. §§700j—509 to —511 (Supp. 1974-75).

Therefore, we issue the following

ORDER

AND NOW, this 12th day of May, 1975, the order of the Milk Marketing Board dated September 11, 1974, except for paragraph No. 2 which is stricken, is hereby affirmed.