Commonwealth of Pennsylvania ex rel. Milk Marketing Board, Plaintiff *v.* The Ohio Casualty Insurance Company, Defendant.

Argued February 4, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Howard D. Brooks,* Assistant Attorney General, with him *Walter J. Sullivan,* Chief Counsel, for plaintiff.

*Robert J. Stewart,* with him *Thompson J. McCullough,* and *Liverant, Senft* and *Cohen,* for defendants.

*Carroll F. Purdy,* with him *Metzger, Hafer, Keefer, Thomas and Wood,* for Milk, Inc., amicus curiae.

OPINION BY JUDGE BLATT, July 2, 1976:

This is an action in assumpsit brought by the Commonwealth of Pennsylvania upon relation of the Milk Marketing Board (Commonwealth) against The Ohio Casualty Insurance Company (Ohio Casualty) as surety on a milk dealer's corporate surety bond (Keystone Bond). The Keystone Dairy Company (Keystone) is the promisor on the bond and the Commonwealth is the promisee. The Commonwealth avers that $200,000 plus interest is due under the Keystone Bond as payment of amounts owed by Keystone under the Milk Marketing Law[1] (Act) for the license year July 1, 1973 to June 30, 1974 during which year Keystone had purchased milk products from Milk Inc. Well over $200,000 remained unpaid on this purchase after June 30, 1974.[2] The Act provides as follows: "It shall be unlawful for a milk dealer or handler to

[1] Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. §700j-101, et seq.

[2] In *Milk Marketing Board v. The Keystone Dairy Company,* 19 Pa. Commonwealth Ct. 45, 338 A.2d 700 (1975) we upheld the Milk Marketing Board's order revoking Keystone's right to apply for a milk dealer's license for the year 1974-1975 because of its failure to make the payments here involved. The order was set aside, however, insofar as it directed forfeiture of the Keystone Bond and payment of the full amount due thereunder because the Board lacks the statutory authority to order bond forfeiture. This action was, therefore, necessitated.

purchase, acquire or receive on consignment or otherwise milk from producers unless the milk dealer or handler shall file with the board a corporate surety, individual surety or collateral bond, supported by United States or Pennsylvania securities, approved by the board . . . . The bond shall be upon a form prescribed by the board, conditioned for the payment by the milk dealer or handler of all amounts due, including amounts due under this act and the orders of the board, for milk purchased or otherwise acquired from producers by the milk dealer or handler during the license year, upon such terms and conditions as the board may prescribe." Section 501 of the Act, 31 P.S. §700j-501. The Act further provides: "The board shall have the power, in its discretion, to sue on the bond on behalf of producers. Suit may be brought in the name of the Commonwealth upon relation of the board, or of the Attorney General, in such manner as debts are now by law recoverable." Section 509 of the Act, 31 P.S. §700j-509. Because of Keystone's failure to pay the amounts due Milk Inc. the Commonwealth instituted this action in assumpsit to recover the $200,000 penalty under the Keystone Bond along with interest running from the date of demand upon the surety, Ohio Casualty. Ohio Casualty answered the complaint and as new matter averred that no payments are due on the Keystone Bond because the time for payment was allegedly extended by the stipulation of Keystone and Milk Inc. in resolution of an action under the jurisdiction of the United States District Court for the Western District of Pennsylvania.[3] The Commonwealth replied to the new matter

---

[3] In that action, which had been filed by the United States to compel compliance with the federal milk marketing laws, the District Court entered judgment in accordance with a stipulation which provided for the full payment of Keystone's obligation to Milk Inc. by weekly installments of $3500 through December 1977.

asserting that the stipulation in satisfaction of Keystone's obligations under federal law does not bar the instant action under the state law. The Commonwealth, believing that the critical facts as established by the pleadings are not in dispute, has now moved for judgment on the pleadings.

The bonding provisions of the Act demonstrate the clear purpose to protect milk producers in the sale of their products to milk dealers. *Commonwealth ex rel. Duff v. Eichmann,* 353 Pa. 301, 45 A.2d 38 (1946). This purpose is evidenced by the fact that the proceeds recovered by the Commonwealth under the required bond are disbursed to the producers who have not been paid in full by the individual dealers. Section 511 of the Act, 31 P.S. §700j-511. The sole producer protected here by the Keystone Bond is Milk Inc., and, of course, the Commonwealth would disburse any proceeds recovered under the bond to Milk Inc. Such being the case, Ohio Casualty argues that Milk Inc. is a donee beneficiary under the bond agreement.[4] At common law a donee beneficiary has an unqualified right of action to enforce the duty of the promisor. *Logan v. Glass,* 136 Pa. Superior Ct. 221,

---

[4] The concept of donee beneficiary is defined in Restatement of Contracts as follows:

"§133. DEFINITION OF DONEE BENEFICIARY, CREDITOR BENEFICIARY, INCIDENTAL BENEFICIARY.

"(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

"(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;" *See Logan v. Glass,* 136 Pa. Superior Ct. 211, 7 A.2d 116 (1939), *aff'd,* 338 Pa. 489 (1940).

7 A.2d 116 (1939), *aff'd*, 338 Pa. 489 (1940). By the same token (and an important point in Ohio Casualty's argument in this case), the donee beneficiary at common law possesses the power to discharge his right against the promisor or the promisor's surety even against the will of the promisee. *See* 4 Corbin on Contracts §811 (1951) ; *Meyer v. Walker-Smith Grocer Co.*, 60 Tex. Civ. App. 462, 127 S.W. 118 (1910). Ohio Casualty argues, therefore, that the stipulation between Milk Inc. and Keystone operates as an extension of or as a substituted contract for the promise made by Keystone under the Keystone Bond and thereby discharges the rights of Milk Inc. under that bond even though such a discharge may be against the wishes of the Commonwealth.

It must be remembered, however, that we are not dealing here with a common law bond governed simply by common law principles. We have a bond here which has been statutorily mandated and which must be governed by the statutory requirements giving rise to its existence. *Cf. Commonwealth v. Ortwein,* 44 Dauph. 342 (1937). In that respect it has been said that, contrary to the common law principle by which a donee beneficiary has a right to enforce the promisor's duty, "[n]othing in the Milk Control law states that milk producers have a cause of action upon this bond. If the legislature intended milk producers to have a cause of action it could have so provided . . . ."[5] *Commonwealth ex rel. Margiotti v. Ortwein,* 43 Dauph. 340, 346-347, 28 Pa. D. & C. 350, 357 (1936). As a result, the Commonwealth alone has the right to enforce the duty of the promisor on the Keystone Bond,

---

[5] An example of such a statute is the Miller Act, §40 U.S.C. §270 et seq., which permits the donee beneficiary of a payment bond required for public works projects to sue in the name of the United States for the use of the person suing.

and the right by the terms of the statute is a discretionary one. *See Milk Marketing Board v. Lehigh Valley Cooperative Farmers, Inc.,* 21 Pa. Commonwealth Ct. 525, 346 A.2d 856 (1975). And, inasmuch as the legislature has not given milk producers the power to enforce duties arising under these bonds, we do not believe that they are given any power to discharge or to extend the time in which a promisor may discharge the duties arising thereunder. It does not stand to reason that the Commonwealth can be divested of its power to sue on such bonds by any ex parte agreements between the promisor and the donee beneficiary, for the General Assembly has specifically entrusted the Commonwealth with the determination as to when such bonds should be enforced. Agreements of the sort here involved may, of course, influence the Commonwealth in reaching its decision to sue or not to sue on the bond, but they cannot preempt the Commonwealth's power to make such a decision in the first instance. It would seem also that the preservation of the Commonwealth's discretion in these cases will help to protect milk producers from their own improvidence or from coercive influences and that it will help to encourage milk dealers to conform faithfully to their obligation to make full payment for milk purchases when due. It would consequently further the clear purpose of the Act.

We must turn, therefore, to the Commonwealth's motion for judgment on the pleadings without regard to the stipulation entered between Milk Inc. and Keystone, because the time for payment of the obligation under the Keystone Bond was not extended by that agreement. Judgment on the pleadings cannot be entered, of course, unless an over-all examination of the pleadings reveals that there are no issues of fact and that the case is clear. 1 Goodrich-Amram §1034. And, to recover from Ohio Casualty under

the Keystone Bond, the Commonwealth need only establish that there was a default by Keystone on the conditions under the bond. *See generally* 35 P.L.E. Suretyship §1 et seq.

Ohio Casualty argues that, apart from the stipulation, the pleadings fail to establish a default by Keystone on its promise to pay all amounts due for milk products purchased or acquired during Keystone's license year 1973-1974. The Commonwealth, however, has pleaded default by Keystone and this default has been clearly established by prior proceedings of the Milk Marketing Board as affirmed by this Court in *Milk Marketing Board v. The Keystone Dairy Company*, 19 Pa. Commonwealth Ct. 45, 338 A.2d 700 (1975). Default by Keystone is, therefore, no longer a question of fact to be resolved at trial.

Ohio Casualty also argues that interest cannot be awarded on the Keystone Bond until it is determined at trial that the corporate surety has not acted in good faith by refusing to comply with the Commonwealth's demand for forfeiture of the bond penalty. Our research reveals, however, that even a good faith refusal of the Commonwealth's demand for forfeiture of the bond would not be a good defense to a claim for interest on the unpaid obligation. As a general rule "when the bond is breached, the penalty to the amount of the damages immediately becomes the debt of the surety and bears interest the same as any other debt on the contract, if the principal claim bears interest." 74 Am. Jur. 2nd, Suretyship §166. And we might add that there does not appear to be any contention that the principal claim does not bear interest in this case. *See Commonwealth v. Ortwein,* 44 Dauph. 342 (1937).

We believe, therefore, that the Commonwealth's motion for judgment on the pleadings must be granted, and we issue the following

ORDER

AND Now, this 2nd day of July, 1976, the motion filed on behalf of the Commonwealth of Pennsylvania for judgment on the pleadings is granted and judgment is hereby entered against the Ohio Casualty Insurance Company in the amount of $200,000 with interest at a rate of 6% per annum from May 28, 1975.

Judge KRAMER did not participate in the decision in this case.