**BALTIMORE BANK FOR COOPERATIVES, Appellant,**

v.

**FARMERS CHEESE COOPERATIVE and Commonwealth of Pennsylvania Milk Marketing Board.**

**No. 77–2470.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) June 22, 1978.

Decided Aug. 25, 1978.

---

Aldisert, Circuit Judge, dissented and filed statement.

Kenneth P. Simon, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant.

H. Woodruff Turner, George M. Cheever, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for appellee Farmers Cheese Cooperative.

Ronald H. Skubecz, J. Justin Blewitt, Deputy Attys. Gen., Harrisburg, Pa., for appellee Com. of Pa. Milk Marketing Bd.

Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge. ·

Baltimore Bank for Cooperatives ("the Bank") challenges on this appeal the propriety of an order of the district court staying further proceedings in a diversity action to recover in excess of $91,000 allegedly due for milk sold and delivered to Farmers Cheese Cooperative ("Farmers Cheese"). The order staying the proceedings directed the parties to proceed at once before the Milk Marketing Board of the Commonwealth of Pennsylvania (MMB or the Board) for full adjudication of the claim.

### I. ·

The Bank is a federal instrumentality created by the Farm Credit Act of 1933, as amended, 12 U.S.C. § 2121, and by virtue of its office in Baltimore, Maryland, is a statutory resident of that state. 12 U.S.C. § 2258. The Bank, during the pendency of a chapter XI proceeding filed by Country Belle Cooperative Farmers ("Country Belle"), advanced funds to Country Belle and with the bankruptcy court's approval obtained an assignment of, *inter alia*, accounts receivable from the debtor aggregating $91,657.03. The Bank filed a complaint in the United States District Court for the Western District of Pennsylvania on August 5, 1975, to recover the foregoing sum, which Farmers Cheese timely answered denying the Bank's claim.[1]

The complaint alleged that the Bank obtained a security interest in all of Country Belle's accounts receivable, including the account of Farmers Cheese. It further alleged that during June 1975 Country Belle sold and delivered to defendant 1,106,-540 pounds of milk at an agreed price of $79,099.91 and sold and delivered milk to it for the preceding month in the sum of $54,624.03 leaving, after certain specified credits and adjustments, a balance owed by defendant to Country Belle of $91,657.03, which the Bank is entitled to apply to the debt owed it by Country Belle. The defendant entered a general denial to these allegations but also separately alleged that the milk referred to in plaintiff's complaint was purchased by defendant from Farmer's Union Milk Producers Association ("FUMPA") for which defendant has paid FUMPA in full.

Two months after Farmers Cheese filed its answer, the Commonwealth of Pennsylvania, supported in the motion by the defendant, moved to intervene as a party defendant, alleging the interest of MMB as an agency of the Commonwealth vested with the power to supervise, investigate, and regulate the milk industry of Pennsylvania. Pa.Stat.Ann. tit. 31 § 700j–301 (1977–78 Supp.). The court granted the Commonwealth's motion to intervene. The intervention motion asserted that the district court lacked jurisdiction over the matter because MMB's power to supervise and regulate included the power to determine any and all liability incurred by Pennsylvania milk dealers to Pennsylvania milk producers. MMB further claimed that the Bank had waived its right to maintain this action by failing to institute proceedings before· the Board and that the Bank was estopped from maintaining the action because the Board, by failing to issue a citation against Farmers Cheese pursuant to its statutory authority, had "in effect deter-

1. Farmers Cheese first filed a motion on September 17, 1975, to dismiss the complaint on the ground that jurisdiction lay with the bankruptcy court because of pending proceedings involving Country Belle and that the suit was barred by the primary jurisdiction of the East-

ern Ohio-Western Pa. Market Administrator, Dairy Division, of the United States Department of Agriculture who should, if he had not already, determine the claim. The district court denied the motion to dismiss and directed the defendant to file an answer.

mined": (1) that there was no liability on the part of the defendant to the Bank and (2) under Pennsylvania law such determination of dealer-producer liability constituted conclusive evidence.

Twenty-two months after filing its first motion to dismiss, the defendant on July 20, 1977 filed a second motion to dismiss the complaint asserting that the district court lacked jurisdiction over the subject matter because of the Board's statutory authority. In the alternative, it requested the court to abstain in view of Pennsylvania's statutory scheme empowering the Board to determine the questions presented in this case. Although it recognized the general rule that federal courts are required to hear cases in which subject matter jurisdiction properly has been invoked, the district court nonetheless declined to hear the merits of the case concluding that "abstention is proper, as a matter of sound discretion, in this case." We disagree and we reverse.

## II.

The threshold question which confronts us is whether we have jurisdiction to entertain this appeal. On October 3, 1977, the Bank applied to this Court for a writ of mandamus directing the district court to proceed with the adjudication of the Bank's claim. We denied the Bank's mandamus application without prejudice to an application to the district court for leave to file an appeal out of time. The district court granted such leave and the Bank promptly filed its notice of appeal. Farmers Cheese filed a motion to dismiss the appeal on the grounds that the appeal was not from a final order appealable under 28 U.S.C. § 1291,[2] that the order appealed from was not an interlocutory order involving an injunction, appealable as of right under 28 U.S.C. § 1292(a)(1), nor was it an order appealable under any other provisions of 28 U.S.C. § 1292(a). The motion panel of this court referred the motion to the merits panel for disposition. We deny the motion.

Farmers Cheese contends that under the principles stated in *Allied Air Freight, Inc. v. Pan American World Airways, Inc.*, 340 F.2d 160 (2d Cir.), *cert. denied*, 381 U.S. 924, 85 S.Ct. 1560, 14 L.Ed.2d 683 (1965); *Chronicle Publishing Co. v. National Broadcasting Co.*, 294 F.2d 744 (9th Cir. 1961); and *Day v. Pennsylvania R.R.*, 243 F.2d 485 (3d Cir. 1957), this appeal must be dismissed. In *Allied Air Freight*, the court of appeals dismissed an appeal from an order staying further proceedings in an antitrust action until the plaintiffs had exhausted their available remedies before the Federal Civil Aeronautics Board. The court held that the stay order until the Civil Aeronautics Board acted was not a final order but merely deferred action for the time being, and it was not an injunctive order as to permit an appeal from the granting or denial of an injunction pursuant to 28 U.S.C. § 1292(a)(1). "Such an order is only a step in the action." *Id.* at 161.

In *Chronicle Publishing Co. v. National Broadcasting Co.*, the district court stayed two private antitrust actions pending a determination by the Federal Communications Commission ("FCC") of the propriety of the television network's acquisition of a local television station in the San Francisco area. Under the law, the San Francisco station could not be transferred without prior FCC approval. Thus, to avoid "two tremendously complex proceedings," where the same facts involved in the principal issues in the antitrust action would be reviewed by the FCC, the district court stayed the proceedings before it.

Finally, in *Day v. Pennsylvania R.R.*, 243 F.2d 485 (3d Cir. 1957), a locomotive engineer sued the Pennsylvania Railroad for back wages allegedly due him under a collective bargaining agreement. The railroad moved for summary judgment on the ground that the engineer had not exhausted his administrative remedies. In the alternative, it sought an order staying all proceedings in the district court pending a

---

**2.** Section 1291 in pertinent part provides:
The court of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . .

decision by the National Railroad Adjustment Board interpreting the collective bargaining agreement. The district court denied the motion for summary judgment but granted the stay because the Board had *exclusive* jurisdiction to decide the question raised in the case.

None of these cases are apposite to the instant case. In each of these cases, the district court merely stayed the proceedings in federal court until matters were determined initially by the appropriate federal agency. Such actions were appropriate applications of the doctrine of primary jurisdiction.

> [I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.

*Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). These cases are classic illustrations of the exercise of the doctrine of primary jurisdiction, staying the proceedings "to wait the determination of matters pending elsewhere." *Day v. Pennsylvania R.R.*, 243 F.2d at 487. See 9 Moore's Federal Practice par. 110.20(4.–3) at 252–253 (2d ed. 1975).[3]

In contrast, in the instant case the district did not stay proceedings to await the determination of matters pending before federal agencies.[4] Rather, in deference to the Pennsylvania MMB, the district court, citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), invoked a species of administrative abstention in the belief that:

the comprehensive state statutory scheme should be given a "proper respect," and that matters the state desires to have determined administratively, and not in the first instance by its court system, should be determined by the state administrative system. Those matters should not by-pass that system by the fortuitous expedient of federal diversity jurisdiction.

In a *Burford*-type administrative abstention, the federal courts defer completely to the state courts so that:

> administrative abstention does not merely postpone original federal jurisdiction, but actually displaces it, removing entirely from the original federal jurisdiction cases that fall within federal jurisdictional grants; a state court will dispose of all the issues in the case, subject to possible Supreme Court review, and whether or not such review is granted, res judicata will bar a party from having the federal district court decide the issue anew.

M. Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine*, 122 U.Pa.L.Rev. 1071, 1153–54 (1974). *See Alabama PSC v. Southern Ry.*, 341 U.S. 341, 350, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

▮▮▮ Although the district court invoked the doctrine of administrative abstention, it failed to dismiss the case, even though "dismissal of the action, rather than retention of jurisdiction pending a state determination is normally appropriate." C. Wright, *Federal Courts* § 52 at 200 (1970). But the technical failure to dismiss should

---

**3.** A leading scholar in administrative law has noted: "Some of the most important primary jurisdiction cases turn on the relationship between the antitrust laws and agency regulatory jurisdiction. [T]hey involve attempts to enforce the antitrust laws against members of related industries. The primary purpose promoted by the antitrust laws is competition; that of most regulatory laws . . . is grounded in the need to eliminate undue competition." Therefore, courts understandably will not attempt to apply antitrust policies until they ascertain the agency's interpretation of the regulatory policy on the issue. B.

Schwartz, Administrative Law, 1976 ed., § 170, p. 493 (1976).

**4.** The defendant also cites us to *Cotler v. Inter-County Orthopedic Ass'n*, 526 F.2d 537 (3d Cir. 1975) and *Arny v. Phila. Transp. Co.*, 266 F.2d 869 (3d Cir. 1959) in which we held a stay order was not appealable. Those cases involved a stay of a federal suit pending disposition of "pending, related state litigation." *Frederick L. v. Thomas*, 578 F.2d 513 (3d Cir. 1978). Here, there is no pending state proceeding whatsoever and no requirement that state remedies be exhausted. See 9 Moore's Fed. Practice, par. 110.20[4.–2] at 251 (2d ed. 1975).

not render an ordinarily final disposition of the case on the basis of abstention unappealable. *Drexler v. Southwest Dubois School Corp.*, 504 F.2d 836, 838 (8th Cir. 1974) (en banc). Such an abstention order is for all intents and purposes a final disposition of the case within the meaning of 28 U.S.C. § 1291 and is therefore appealable. *Indiana State Employees Ass'n, Inc. v. Boehning*, 511 F.2d 834 (7th Cir. 1975).

### III.

We turn now to the propriety of the district court's decision to abstain on the basis of *Burford* and to require the Bank to proceed for the collection of its claim before the Milk Marketing Board. In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1942), Sun Oil Co. brought suit in the federal court against the Texas Railroad Commission to enjoin it from permitting Burford to drill and operate oil wells in the East Texas Oil Field. Federal jurisdiction was invoked on the basis of diversity of citizenship and the denial of due process of law. The issue as formulated by Mr. Justice Black, author of the opinion, was whether the federal district court, assuming it had jurisdiction, should have declined to exercise it as a matter of sound equitable discretion. The production control of oil under consideration was part of a comprehensive and complicated general regulatory system structured to conserve oil and gas in Texas. The state was also concerned with the impact of the oil and gas industry on the whole economy of the state, including the impact of its revenues on the state's educational and eleemosynary institutions. Although the dispute before the court involved private properties, the court noted that the overall plan of regulation was of vital interest to the general public. Texas had established a system of thorough judicial review by its own state courts. To secure uniformity of interpretation and to prevent confusion of multiple review, the

legislature provided for concentration of all direct review of the Commission's orders in the state district courts of Travis County, which apparently had the responsibility of coordinating with the Commission in regulating the industry.

The Supreme Court held that the federal court should have dismissed the complaint on the ground that the issues involved specialized knowledge of state policy and a complicated regulatory system. Because regulation of the industry of the state administrative agency clearly involved basic problems of state policy, the court concluded that intervention by the federal courts was certain to result in conflicts of interpretation of state law and under such circumstances, "a sound respect for the independence of state action requires the federal equity court to stay its hand [and dismiss the complaint]." 319 U.S. at 334, 63 S.Ct. at 1107.

Before determining the relevance of *Burford* to the instant case, we must first examine the state statutory scheme at issue here. To regulate the complex milk industry in Pennsylvania, the Pennsylvania State Legislature enacted the Milk Marketing Law of 1968, Pa.Stat.Ann. tit. 31 § 700j–301 (1977–78 Supp.) ("the Act") which created an independent administrative board of three members to be known as the Milk Marketing Board. The Act vested the Board

> with power to supervise, investigate and regulate the entire milk industry of this Commonwealth . . . ..

The Act provides for a licensing and inspection system for milk dealers or handlers as defined by the Act,[5] who are prohibited from purchasing or receiving milk from producers unless they first file an appropriate surety or collateral bond with the Board and approved by it. Pa.Stat.Ann. tit. 31 § 700j–501. The bond is conditioned "for the payment by the milk dealer or handler

---

5. Under the Act, a producer is defined as one who purchases or generally receives milk within the Commonwealth for sale, shipment, processing, or manufacture within or without the Commonwealth, whether on behalf of himself or others, or both. A producer who delivers milk to a dealer or handler only is not deemed a dealer or handler. Pa.Stat.Ann. tit. 31 § 700j–103.

of all amounts due . . . for milk purchased or otherwise acquired from *producers* by the milk dealer or handler during the license year . . .." Pa.Stat.Ann. tit. 31 § 700j–501 (emphasis supplied). The Act further empowers the Board in its discretion to sue on the bond on behalf of *producers*.[6]

▋ The specific purpose of the bonding provisions of the Act is to protect *milk producers* in the sale of their products to milk dealers. *Commonwealth ex rel. Milk Market Board v. Ohio Cas. Ins. Co.*, 25 Pa. Cmwlth. 371, 360 A.2d 788 (1976). Any suit on the bond is only on behalf of *milk producers*. Country Belle, however, was not a milk producer; the district court found that the parties had agreed "that *Country Belle* was a handler."

▋ The district court rested its decision to abstain on three grounds. First, that the suit "is likely . . . to involve some technical issues that are more readily understood by the regulatory agencies." Second, that the party to whom the defendant alleges it paid for the milk was not in court, and, third, the danger that its adjudication of this lawsuit could result in inconsistent determinations.

None of the considerations that led to the abstention in *Burford v. Sun Oil Co., supra,* are present in this assumpsit action. No special expertise or competence of Pennsylvania's MMB is involved in the determination of whether Country Belle sold and delivered the milk. No challenge is made to the authority, policies, or regulations of the state regulatory agency. No constitutional issue is raised.

There [in *Burford*] it was deemed desirable, as a matter of discretion, that a federal equity court should step aside and leave a specialized system of state administration to function. Here the suit in a federal court would not supplant a specially adaptable state scheme of administration nor bring into play the expert knowledge of a state [regulatory agency] regarding local conditions. The subject matter and the course of litigation in the federal court would be precisely the same as in the state court.

*Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 60, 64 S.Ct. 873, 879, 88 L.Ed. 1121 (1944). (Frankfurter, J., dissenting.)

The milk industry in Pennsylvania may be a much regulated industry, but the district court noted that "the present suit does not involve issues that are peculiarly within the discretion and expertise of those agencies [the MMB and the United States Department of Agriculture] and so intricate as to defy judicial determination." The instant case, in sharp contrast to *Burford*, is concerned with a ordinary suit in assumpsit for goods sold and delivered. Diversity of citizenship and the jurisdictional amount in controversy are conceded and, except for subject matter jurisdiction, the defense is that the milk in question "was purchased by Farmers Cheese Corporation from Farmers Union Milk Producers Association ("FUMPA"), and Farmers Cheese Corporation has paid FUMPA in full for such milk." Clearly, no matters of state policy are involved; state regulation of the milk industry is neither invaded nor threatened. No irreconcilable conflict between the "statutory scheme and the persistence of common-law remedies" is presented. *Nader v. Allegheny Airlines*, 426 U.S. 290, 299, 96 S.Ct. 1978, 1984, 48 L.Ed.2d 643 (1975).

Furthermore, Pennsylvania's regulation of the milk industry is not concerned with protecting dealers and handlers of milk in payment for milk sold and delivered. They are expected to fend for themselves. Reliance by the district court on MMB's right to collect on the defendant's bond filed under the Pa. Milk Control Act, Pa.Stat.Ann. tit. 31 § 700j–501, is a misconstruction of the law because the MMB may sue on that bond only in behalf of milk *producers*. *See* n.3, *supra*. Inasmuch as Country Belle,

---

6. The Act provides:

The board shall have the power, in its discretion, to sue on the bond on behalf of producers. Suit may be brought in the name of the Commonwealth upon relation of the board, or of the Attorney General, in such manner as debts are now by law recoverable.

Pa.Stat.Ann. tit. 31 § 700j–509 (1977–78 Supp.).

Bank's assignor, is not a milk producer, the MMB is unable to afford the Bank relief. Requiring preliminary resort to a forum which cannot afford relief is a reversion to an "artificial dichotomization of remedial justice." B. Schwartz, *Administrative Law, supra,* at 492.

As a general rule, federal courts have "virtually the unflagging obligation" to exercise the jurisdiction given them. *Colorado River Water Cons. Dist. v. U.S.,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975). The mere presence of some technical issues or difficulty of the law in this suit for goods sold and delivered is insufficient ground for a federal court to relinquish diversity jurisdiction. *Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 27, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1958), *citing with approval Meredith v. Winter Haven,* 320 U.S. 228, 236, 64 S.Ct. 7, 88 L.Ed. 9 (1943).[7] So long as the action will not needlessly conflict with the state in its administration of its own internal affairs, there is no justification for the federal district court to abstain. Furthermore, the absence of FUMPA, the party from whom defendant alleges it purchased and to whom it paid for the milk, should not be a factor to be considered in the abstention. This may be a defense to plaintiff's action, but not a ground for relinquishing jurisdiction. Finally, we see no merit to the district court's observation that its decision may lead to an inconsistent determination with the MMB.

*Burford,* as we have already indicated, was an equitable action to restrain the Texas Railroad Commission. The instant litigation to recover a debt is a legal action. Traditionally, abstention has been applied only in cases involving equitable relief. The district court, however, applying the holding in *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), impermissibly extended abstention to a common law action.

In *Thibodaux,* the authority of the City of Thibodaux to expropriate property of the Louisiana Power & Light Co. was challenged in a diversity eminent domain proceeding in a U.S. district court. The district court *sua sponte* stayed the proceedings until the Supreme Court of Louisiana had been afforded an opportunity to interpret the statute on which the City's expropriation order was based. The Supreme Court approved the district court's abstention action, even though the action was one at law rather than an exercise of equitable jurisdiction, on the narrow ground that an eminent domain proceeding had a "special and peculiar nature" involving a sovereign prerogative. *Id.* at 28, 79 S.Ct. at 1070. In that case, the determination of the nature and extent of the City's eminent domain powers concerned the discrete apportionment of government powers between the City of Thibodaux and the state. Because the issues turned on legislation with much local variation interpreted in local settings, the court concluded that "[t]he considerations that prevailed in conventional equity suits for avoiding the hazards of serious disruption by federal courts of state government . . . are similarly appropriate in a state eminent domain proceeding . . . ." *Id.* at 28, 79 S.Ct. at 1073. A reading of the opinion makes clear that the court was not extending the narrow doctrine of equitable abstention to actions at law generally. It was merely etching out a very limited exception for abstention in actions at law because of the peculiar nature

---

7. Professor Wright points out, *Federal Courts, supra* at 203, that four years after *Thibodaux,* the Supreme Court seemed to be at pains to reaffirm the *Meredith* principle in *McNeese v. Board of Education for Community School District, 187,* 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) stating:

Yet where Congress creates a head of federal jurisdiction which entails a responsibility to adjudicate the claim on the basis of state law, viz., diversity of citizenship, as was true in *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, we hold that difficulties and perplexities of state law are no reason for referral of the problem to the state court . . . .

of eminent domain cases and the unclear applicable state law.[8]

Finally, there is another important consideration which renders abstention impermissible in this case—a consideration which also troubled the district court.[9] The Commonwealth of Pennsylvania was permitted to intervene as a party defendant, not only asserting that jurisdiction was in the MMB, but averring that the bank had waived its right to bring the action because Country Belle had not asserted a claim under the bond posted by the defendant with the State Intervenor, and because the MMB "has in effect determined that all Pennsylvania milk producers and/or their assignees have been paid in full for all milk shipped to defendant." Inasmuch as the Commonwealth of Pennsylvania has intervened as a party defendant to this proceeding and in its intervention motion has not only indicated a hostility to plaintiff's claim but also a virtual pre-judgment by the MMB, the Bank can hardly expect to receive a fair and impartial hearing before the state regulatory agency or a fair presentation of plaintiff's claim by the MMB if it were to sue on behalf of plaintiff on the defendant's bond, assuming the permissibility of such suit on the bond.

■ Congress adopted the policy of opening the doors of the federal courts to all diversity cases involving the jurisdictional amount to assure suitors from a foreign state of an impartial and neutral forum. In the instant case, we have the anomaly of a federal instrumentality resident in Maryland required to submit its claim to a Pennsylvania administrative agency which has intervened in the controversy and is a party defendant. Thus, the federal instrumentality is denied the right to resort to a jurisdiction which it was entitled to invoke by Congressional action in the absence of any exceptional circumstances which would warrant a refusal to exercise that jurisdiction.

## IV.

In summary, this case is concerned only with whether the defendant owes any money to the Bank for milk the defendant purchased. A resolution of this issue does not require the district court to determine or shape state policy governing the marketing of milk in Pennsylvania. It entails no interference with that agency or with the state court. No litigation is pending in the state courts involving this issue. No state statute or regulation is constitutionally challenged. No public policy or interest is served by declining jurisdiction. The claim is not dependent upon the resolution of any uncertain questions of state law. Thus, not only are there no exceptional circumstances justifying a refusal to exercise the obligation that attends federal diversity jurisdiction, but the posture of the MMB in the circumstances of this case raises a serious question as to whether that state agency can provide a neutral forum for a hearing on the merits of this case and the further question as to whether it can obtain full relief for the plaintiff in a state court.

8. We find support for our conclusion in *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), decided the same as *Thibodaux*, where the Supreme Court held abstention improper in a diversity jurisdiction case involving state eminent domain. In *Mashuda*, the court held that it was error for the district court to dismiss the complaint and further held that "since the controlling state law is clear and only factual issues need be resolved, there is no occasion in the interest of justice to refrain from prompt adjudication." *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. at 31, 79 S.Ct. at 1074, Stewart, J. concurring.

9. In its abstention opinion the district court expressed its apprehension in relegating the case to the MMB.

One matter is troubling to the court in submitting this matter to the Board (MMB) and requires comment. In support of its Motion to Intervene, the Board has assumed an adversary posture. It has suggested, e. g., that its prior inaction in this matter constitutes a determination on its part that the books and records of defendant were proper and that no further payments were due plaintiff. The Board has further suggested that plaintiff can bring a mandamus action to force the Board to formalize this determination.

Accordingly, the judgment of the district court will be reversed and the case remanded for prompt proceedings not inconsistent with this opinion.

ALDISERT, Circuit Judge, dissenting.

I would affirm the judgment of the district court for the reasons set forth by Chief Judge Gerald J. Weber in *Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative*, No. 75–973 (W.D.Pa. Aug. 19, 1977).