The UNIVERSITY OF MARYLAND AT BALTIMORE, Andrew R. Burgess, M.D., Sea Quest, Inc. and the School Board of Palm Beach County Florida, for Themselves and all Others Similarly Situated, Plaintiffs,

v.

PEAT, MARWICK, MAIN & COMPANY, Defendant.

Civ. A. No. 89–6289.

United States District Court, E.D. Pennsylvania.

May 9, 1990.

Howard E. Kohn and David H. Weinstein, Kohn, Savett, Klein, & Graf, P.C., Philadelphia, Pa., and Richard A. Brown, Spiegel & McDearmid, Washington, D.C., for plaintiffs.

Richard DiSalle, Roger Curran and Susan M. Malone, Rose, Schmidt, Hasley, & DiSalle, Pittsburgh, Pa., for the Ins. Com'r.

John W. Frazier, IV, John E. Caruso and Richard C. Placey, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

In 1986, a Pennsylvania insurance company called Mutual Fire was declared insolvent by the Insurance Commissioner and placed into rehabilitation proceedings. A step-by-step description of the machinations unloosed by the Mutual Fire proceedings is probably beyond the ability of this Court to relate. But for the purposes of this case, one subset of developments is the most important.[1]

In October 1988, the Insurance Commissioner[2] filed a Praecipe for Writ of Summons against Peat, Marwick, Main & Company in connection with its audits of Mutual Fire's books, and subsequently the In-

---

1. According to an opinion written by President Judge Crumlish of the Commonwealth Court in support of the Insurance Commissioner's plan of rehabilitation, Mutual Fire was founded in 1902 as a carrier of property and casualty insurance. By the 1980's, Mutual Fire had become heavily involved in reinsurance and the underwriting of surety bonds for the oil, gas, and real estate business. Also, its liability coverage was showing "diminishing profitability." The net effect of these factors was that at the time Mutual Fire went into rehabilitation proceedings in 1986, it reported assets of $99.4 million and total liabilities of $260.1 million, for a policy-

holders deficit of $161 million. By the end of 1988, the deficit was over $400 million, "constituting the country's fourth largest insurer insolvency." *See Grode v. Mutual Fire,* 572 A.2d 798 (Commw.Ct.1990).

2. The Pennsylvania Insurance Commissioner has been referred to throughout most of the pleadings submitted by both parties as either "the Intervenor" or "the Rehabilitator," but the Court will refer to the "Insurance Commissioner" throughout this opinion.

surance Commissioner determined that Peat Marwick, in its capacity as Mutual Fire's independent auditor, had improperly audited and reported Mutual Fire's financial condition for several years prior to its insolvency. *See* Insurance Commissioner's Brief in Support of Motion to Intervene and Motion to Dismiss, p. 4. The Insurance Commissioner estimated the damages caused by Peat Marwick's audits to be in excess of $350 million. *Id.*

Armed with this information regarding the role Peat Marwick allegedly played in Mutual Fire's financial demise, and apparently undaunted by a Confidentiality Order issued by the Commonwealth Court in September 1988, which stated that any information produced by Peat Marwick "shall be used solely for the purposes of the Mutual Fire rehabilitation," plaintiffs made their way to the federal courthouse and filed this class action against Peat Marwick in federal district court on August 30, 1989.[3] A little over a month later, on October 4, 1989, the Insurance Commissioner filed a similar suit against Peat Marwick in Commonwealth Court. On October 12, 1989, the Insurance Commissioner filed a Motion to Intervene in this case.

Plaintiffs in the case before the court filed their class action on behalf of all policyholders who bought insurance policies from Mutual Fire between July 1, 1980 and April 30, 1986. Specifically excluded from the class were holders of surety bonds in connection with loans involving real estate, oil, and gas investments, and insurance or underwriting entities reinsured by Mutual Fire. Their amended complaint contains six counts: negligence per se, fraud, negligent misrepresentation, neg-

ligence, actions in concert, and RICO. The case the Insurance Commissioner filed in the Commonwealth Court is on the behalf of "Mutual Fire, all of its policyholders and insureds, all other creditors and interested parties, and the general public," and had three counts, negligence and malpractice, breach of contract, and misrepresentation.

As with almost every aspect of this complicated and extensively-briefed case, any attempt at narrowing the issues runs the risk of oversimplification, but it is the conflict between these two similar, but different cases which is at the heart of the motion now before the Court. The court has before it a Motion to Dismiss made by Constance B. Foster, the Insurance Commissioner for the Commonwealth of Pennsylvania.[4] The multiplicity of arguments raised by the Insurance Commissioner range from abstention, to dismissal based on Rule 11 sanctions. The court will not deal with each and every argument advanced, but will begin with the abstention argument.

The Mutual Fire rehabilitation proceedings were undertaken in accordance with Article V of the Pennsylvania Insurance Department Act, 40 Pa.Stat.Ann. § 221.1 *et seq.* (Purdon 1989). Under § 221.4, the Commonwealth Court has the exclusive jurisdiction over a "delinquency proceeding," such as the one the Insurance Commissioner initiated with Mutual Fire. According to § 221.16(b), the Rehabilitator "... shall have all powers of the directors, officers and managers, whose authority shall be suspended, except as they are redelegated by the rehabilitator. He shall have full power to direct and to manage ... and to deal with the property and business of the insurer."

---

**3.** The Insurance Commissioner contends that the filing of the federal case was triggered when the Insurance Commissioner appointed the Pittsburgh firm of Rose, Schmidt, Hasley & DiSalle as special counsel for the Insurance Commissioner's action, and not Richard A. Brown, a Washington, D.C. attorney with the firm of Spiegel & McDiarmid, who had been special counsel to the policyholders committee during the rehabilitation proceedings. Mr. Brown's action in filing this class action, three weeks after the appointment of Rose, Schmidt, generated a considerable amount of bile, acrimony, and accusations of bad faith, and at present there is a Rule

to Show Cause entered for him in Commonwealth Court to show why he should not be held in contempt of court. This particular dispute, i.e., whether or not Mr. Brown violated a Commonwealth Court order by filing this case, is a battlefield unto itself in this litigation, and this Court has no inclination to join that combat.

**4.** The Insurance Commissioner was permitted to intervene by Order of this court on February 1, 1990, for the limited purpose of filing a Motion to Dismiss.

The Commonwealth of Pennsylvania is one of many states which have enacted a scheme of regulating the "business of insurance" in accordance with the specific mandate of the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15 (1982), which states that state regulation of the business of insurance is "in the public interest" and that the business of insurance should be subject to state laws relating to the "regulation ... of such business." 15 U.S.C. §§ 1011, 1012(a). *See Lac D'Amiante du Quebec v. American Home Assurance*, 864 F.2d 1033, 1038–39 (3d Cir.1988); *see generally, Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 126–34, 102 S.Ct. 3002, 3007–11, 73 L.Ed.2d 647 (1982). The *LAQ* case, in addition to being the Third Circuit's most recent ruling on an abstention question, bears more than a passing resemblance to the case before the court. LAQ, a maker of asbestos incorporated in Delaware but with its principal place of business in Quebec, Canada, sued its insurer in New Jersey to recover an indemnity. A federal judge in New Jersey declined to exercise abstention, even after the insurer had been ordered into liquidation proceedings by the New York Superintendent of Insurance, and the New York insurance superintendent had been appointed statutory receiver by a New York court. The Third Circuit reversed the district court and found abstention appropriate, in accordance with the *Burford* abstention doctrine.

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) the Supreme Court reinstated the dismissal of an action filed in a Texas district court which challenged a decision by the Texas Railroad Commission in granting an oil drilling permit. "As a practical matter, the federal courts can make small contribution to the well-organized system of regulation and review which the Texas statutes provide." 319 U.S. at 327, 63 S.Ct. at 1104. "Delay, misunderstanding of local law, and needless federal conflict with the state policy are the inevitable product of this double standard of review." *Id.* As clarified in the *LAQ* decision, *Burford* stands for the proposition that where a state has created a complex regulatory scheme which is supervised by state courts and central to state interests, abstention is appropriate if despite federal jurisdiction there are primarily state issues involved, and if federal jurisdiction will disrupt a state's efforts "to establish a coherent policy with respect to a matter of substantial state concern." *Lac D'Amiante du Quebec, supra,* at 1043, quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

The facts of the present case and those of the *LAQ* case are not a perfect match. The proceedings in *LAQ* were liquidation proceedings, not rehabilitative. More significantly, the *LAQ* proceedings involved an action by a insured against its insurer. The case before this court is a class action on behalf of the policyholders of an insolvent insurer against the independent auditors of the insurance company's books. It is at least one step beyond the facts of *LAQ*.[5]

Plaintiffs argue that the case they have filed is fundamentally different from the case the Insurance Commissioner has initiated against Peat Marwick in the Commonwealth Court. They say the Insurance Commissioner's authority as Intervenor is analogous to that of a trustee in a bankruptcy proceeding. Therefore, the Insurance Commissioner, while undoubtedly possessing the authority to proceed with Mutual Fire's claims against Peat Marwick, has no authority to advance those of the policyholders against Peat Marwick.[6] Furthermore, they maintain, the Commonwealth Court has no jurisdiction to hear any claims presented by the policyholders

---

5. As the Court of Appeals pointed out *LAQ,* it is even unclear whether the state regulation of insurance insolvencies constitutes the "business of insurance" described in the McCarran–Ferguson Act.

6. They cite a case decided by Judge Ditter of this district which stated the general proposition

that a trustee in a bankruptcy proceeding only has authority to assert claims belonging to the estate and not those of a creditor against another party. *Bergier v. Price Waterhouse,* 81 B.R. 303, 305–06 (E.D.Pa.1987).

because the § 221.4 of the Pennsylvania Insurance Department Act limits its jurisdiction to Mutual Fire's "delinquency proceeding."[7]

Plaintiffs go on to point out one additional factor. The class action they have filed with this court alleges there was collusion between Mutual Fire and Peat Marwick in the preparation of the audits and financial statements, so that Mutual Fire and Peat Marwick were, to a certain extent, conspirators in presenting a fraudulent picture of Mutual Fire's finances to the public. Since the Insurance Commissioner stands in the shoes of Mutual Fire, she is subject to the same defenses. Plaintiffs say that Peat Marwick "is free to put at issue the role Mutual Fire's management played in the preparation of the company's financial statements, and in events resulting in Mutual Fire's precipitous financial collapse."

As the initial responses filed by Peat Marwick in both this case and the Commonwealth Court case suggest, plaintiffs' speculation about Peat Marwick's defense strategy is well-founded. But it is also irrelevant to the larger issue involved, which is this: can this Court justify the disruption of costly, time-consuming state proceedings to hear the specialized claims of a particular class of plaintiffs because those plaintiffs anticipate their claims will be processed more effectively and expeditiously in a federal court?

There is no difficulty in uncovering ample authority to justify a federal court abstaining from a case which pertains to insurance regulation. *See Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *Pennsylvania v. Williams*, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935); *Aims Enterprises, Inc. v. Muir*, 609 F.Supp. 257 (M.D.Pa.1985). The difficulty lies in finding a compelling justification for two courts to be sitting in judgment over the question of what Peat Marwick did or did not do which contributed to the fall of Mutual Fire. The possibility that the plain-

tiffs might not be able to make their case against Peat Marwick with the same clarity does not outweigh the certainty that permitting this case to proceed would muddle, and at the least, complicate, the proceedings which began in Commonwealth Court well before the filing of this case. As many courts have noted through the years, perhaps beginning with Justice Cardozo's observations in *Clark v. Willard*, 292 U.S. 112, 123–24, 54 S.Ct. 615, 620, 78 L.Ed. 1160 (1934) experience has demonstrated that the distribution of the assets of an insolvent corporation are best served when they are entrusted to a single manager under the supervision of a single court. *See Levy v. Lewis*, 635 F.2d 960, 964 (2d Cir.1980). The Commonwealth of Pennsylvania has undertaken the responsibility of regulating the insurance industry in Pennsylvania, and the Commonwealth Court has been given the authority to preside over the rehabilitation of Mutual Fire. Any attempt by this Court to stake out a claim over even a part of those far-flung proceedings and attempt to impose the kind of "double standard of review" the Supreme Court condemned in *Burford* would be pointless and misguided.

We therefore enter the following Order:

## ORDER

And now, this 9th day of May, 1990, having considered the Motion to Dismiss filed by the Insurance Commissioner of the Commonwealth of Pennsylvania, and Plaintiff's Response, IT IS ORDERED that:

1. The Insurance Commissioner's Motion to Dismiss is GRANTED, and:

2. Plaintiffs' Motion for a Preliminary and Permanent Injunction is DENIED, as moot.

---

**7.** A brief submitted by Peat Marwick to the Court makes an identical argument. Peat Marwick has answered the Commonwealth Court case by asserting that the Insurance Commissioner has no authority to assert, and the Commonwealth Court has no jurisdiction to hear, any claims on behalf of Mutual Fire's policy-

holders. In their brief before this Court, Peat Marwick also maintains that regardless of the Motion to Dismiss filed by the Insurance Commissioner, the policyholders amended complaint should be dismissed because the policyholders were not in privity of contract with Peat Marwick.