923 F.2d 265
 59 USLW 2452, RICO Bus.Disp.Guide 7663
 The UNIVERSITY OF MARYLAND AT BALTIMORE, Andrew R. Burgess,
M.D., Sea Quest, Inc., and the School Board of
Palm Beach County, Florida, for
Themselves and all Others
Similarly Situated
v.
PEAT MARWICK MAIN & COMPANY,
Constance B. Foster, Insurance Commissioner of the
Commonwealth of Pennsylvania, as Rehabilitator of
the Mutual Fire, Marine and Inland
Insurance Company, Intervenor.
Appeal of The UNIVERSITY OF MARYLAND AT BALTIMORE, Andrew R.
Burgess, M.D., Sea Quest, Inc., and The School
Board of Palm Beach County, Florida.
 No. 90-1374.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 10, 1990.
Decided Jan. 11, 1991.
Rehearing and Rehearing In Banc Denied
Feb. 8, 1991.
 
 Richard A. Brown (argued), Spencer L. Kimball, Ben Finkelstein, Jeffrey R. Babbin, Spiegel & McDiarmid, Washington, D.C., Harold E. Kohn, David H. Weinstein, Robert S. Kitchenoff, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for appellants University of Maryland at Baltimore, Andrew R. Burgess, M.D., Sea Quest, Inc., and School Bd. of Palm Beach County, Fla.
 Richard DiSalle (argued), Roger Curran, Susan Hileman Malone, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, Pa., Bonnie B. Leadbetter, Mut. Fire, Marine & Inland Ins. Co., Philadelphia, Pa., for Intervenor-Appellee Constance B. Foster, Ins. Com'n of Com. of Pa., as Rehabilitator of the Mut. Fire, Marine and Inland Ins. Co.
 John W. Frazier, IV, John E. Caruso, Richard G. Placey (argued), Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., (Claudia L. Taft, Frances Civardi, KPMG Peat Marwick, New York City, of counsel), for appellee Peat Marwick Main & Co.
 Before MANSMANN, ALITO and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 This appeal arises from a class action filed in the district court for the Eastern District of Pennsylvania by certain policyholders of an insolvent insurance company, The Mutual Fire, Marine and Inland Insurance Company ("Mutual Fire"), against Mutual Fire's independent auditor, seeking damages allegedly resulting from the auditor's false and misleading certification of the insurer's financial statements. The district court, after permitting the state insurance commissioner to intervene for the purpose of filing a motion to dismiss, granted that motion and dismissed the complaint. As the basis for its dismissal, the district court cited the abstention doctrine announced in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), which permits federal courts in limited circumstances to abstain from exercising their jurisdiction over a case in order to avoid disruption of an important and complex state regulatory system.
 
 
 2
 Subject matter jurisdiction of this case derives from 28 U.S.C. Sec. 1331 and 18 U.S.C. Sec. 1964(c). We have appellate jurisdiction, under 28 U.S.C. Sec. 1291, from the district court's order of May 9, 1990, granting the intervenor's motion to dismiss and denying as moot plaintiffs' motion for a preliminary and permanent injunction.
 
 
 3
 The primary question on this appeal is whether the district court correctly abstained under Burford. For the reasons that follow we believe that Burford abstention does not extend to actions such as the one before us. We will therefore vacate the district court's order of dismissal and remand for further proceedings.
 
 I.
 A.
 
 4
 Appellants University of Maryland at Baltimore and three other named plaintiffs (collectively, "the policyholders") brought this case as a class action against Peat, Marwick, Main & Co. ("PMM"), on behalf of over 20,000 individuals, businesses and public institutions who hold insurance policies issued by Mutual Fire. The district court has not as yet ruled on class certification. The policyholders alleged that Mutual Fire's publicly filed, audited financial statements were materially false and misleading and that Mutual Fire's independent auditor, PMM, wrongfully gave unqualified auditor's opinions, certifying without adequate basis that those statements fairly presented Mutual Fire's financial condition. The appellants further alleged that Mutual Fire's financial statements, as certified by PMM, falsely showed that Mutual Fire had adequate financial resources to honor its obligations; that Mutual Fire is now insolvent and in receivership; that the policyholders relied on PMM's representations and would have transferred their risks to a financially sound insurance company if they had known of Mutual Fire's unsound status; and consequently that the policyholders were injured by PMM's actions.
 
 
 5
 The Pennsylvania Insurance Commissioner, Constance B. Foster, in her capacity as the statutory receiver (or "rehabilitator") of Mutual Fire,[1] was permitted to intervene for the limited purpose of moving to dismiss the complaint. The Commissioner listed several grounds in support of the motion to dismiss, among which was the doctrine of federal court abstention. PMM also filed a motion to dismiss.
 
 
 6
 On May 9, 1990, the district court for the Eastern District of Pennsylvania granted the Commissioner's motion to dismiss.[2] The district court stated that it was applying the doctrine of abstention established in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), which it summarized as follows:
 
 
 7
 [W]here a state has created a complex regulatory scheme which is supervised by state courts and central to state interests, abstention is appropriate if despite federal jurisdiction there are primarily state issues involved, and if federal jurisdiction will disrupt a state's efforts "to establish a coherent policy with respect to a matter of substantial state concern."
 
 
 8
 Dist.Ct.Op., 736 F.Supp. 643, 645 (quoting Lac D'Amiante du Quebec v. American Home Assurance Co., 864 F.2d 1033, 1043 (3rd Cir.1988)). As the basis for its decision to apply Burford abstention, the district court cited Pennsylvania's regulation of the insurance industry, the Pennsylvania Commonwealth Court's authority to preside over the rehabilitation of Mutual Fire, and the pendency of a suit by the Commissioner (on behalf of Mutual Fire) against PMM.
 
 
 9
 Although Pennsylvania has created a "complex regulatory scheme" to govern insolvencies of insurance carriers--an issue which is at least arguably "central to state interests"--the instant suit is not against Mutual Fire itself (the company subject to the state's "complex regulatory scheme"), but rather against the company's independent auditors, PMM. As the district court recognized, see 736 F.Supp. at 645, it would go beyond the usual scope of Burford abstention to decline jurisdiction in such a case. Nonetheless, the district court believed that permitting the present federal action to continue would interfere with the ongoing state rehabilitation proceeding of Mutual Fire. The district court could find no "compelling justification for two courts to be sitting in judgment over the question of what Peat Marwick did or did not do which contributed to the fall of Mutual Fire." Dist.Ct.Op., 736 F.Supp. at 646.
 
 B.
 
 10
 On December 4, 1986, the Insurance Commissioner petitioned in the Commonwealth Court of Pennsylvania to place Mutual Fire in rehabilitation under Article V of the Pennsylvania Insurance Department Act, 40 Pa.Stat.Ann. Sec. 221.1 et seq. (Purdon's). On December 8, 1986, pursuant to 40 Pa.Stat.Ann. Sec. 221.15, the Commonwealth Court placed Mutual Fire in rehabilitation and appointed the Insurance Commissioner or her successor as receiver of Mutual Fire.[3] The Commissioner's proposed rehabilitation plan, filed with the Commonwealth Court, was approved (as modified) on January 23, 1990. An appeal of the plan to the Pennsylvania Supreme Court is pending. The plan apparently provides for the filing of certain claims by policyholders against Mutual Fire, but will permit only partial recovery of the policyholders' damages.
 
 
 11
 The Commissioner has also brought her own suit, on behalf of Mutual Fire, against PMM (in the Commonwealth Court). The plaintiffs in the present action, however, argue that the Commissioner's suit and this suit are fundamentally different. The two suits differ both as to the class of persons on behalf of whom the suits are brought and as to the specific causes of action alleged against PMM.
 
 
 12
 The instant action, insofar as it sought certification of a class, was brought on behalf of policyholders who bought insurance policies from Mutual Fire between July 1, 1980 and April 30, 1986. The designated class would specifically exclude holders of surety bonds in connection with loans involving real estate, oil, and gas investments, and insurance or underwriting entities reinsured by Mutual Fire. Mutual Fire itself, moreover, is not a party to the policyholders' action. The Commissioner's Commonwealth Court action, by contrast, was brought on behalf of Mutual Fire itself, as well as all of its policyholders and insureds, all other creditors and interested parties, and the general public.
 
 
 13
 The two cases also differ in the causes of action stated. The amended complaint in the action before us contains six counts, including a RICO claim. The Commissioner's suit against PMM contains three counts: it does not encompass the RICO claims alleged in the instant action, nor does it allege the breach of any duty that PMM owed directly to the policyholders, creditors, or the public. It is brought by the Commissioner in her capacity as representative of Mutual Fire, and seeks damages only for PMM's alleged breach of duties owed to Mutual Fire.
 
 C.
 
 14
 The plaintiffs argue that since the Commissioner did not, and cannot, assert the policyholders' direct claims against PMM in her suit in Commonwealth Court, the district court had no discretion to abstain in favor of the Commonwealth Court.
 
 
 15
 The plaintiffs further argue that PMM's liability to the plaintiffs is not within the Commonwealth Court's limited jurisdiction. Therefore, they conclude, Pennsylvania has not attempted to establish a coherent and complex regulatory policy concerning claims against the former auditors of insolvent insurance companies, and thus Burford abstention is inappropriate. Moreover, they argue, it would clearly be inappropriate for the district court to abstain in favor of a court that does not have jurisdiction to hear plaintiffs' claims. Finally, they argue that Burford abstention encompasses only actions for equitable or declaratory relief, not common-law or monetary actions.
 
 D.
 
 16
 The intervenor-appellee (the Commissioner) argues that this case is an effort by some of the creditors of Mutual Fire to frustrate the Commissioner's efforts to obtain control over a "substantial asset" of Mutual Fire's--i.e. the claim against PMM--so that these policyholders may gain a preference over other creditors in the distribution of Mutual Fire's assets. The Commissioner's concern is that if the policyholders are allowed to proceed, the estate might lose "its largest asset--the $350 million claim against Peat Marwick." Brief of Intervenor-Appellee at 11. Permitting these policyholders to pursue their separate claim against PMM, she argues, would frustrate Pennsylvania's statutory scheme to regulate insolvent insurance companies.
 
 
 17
 The Commissioner also argues that the Pennsylvania regulations governing the insurance industry include provisions affecting auditors, and therefore that suits against Mutual Fire's auditors fall within a state regulatory scheme of the type that Burford abstention is designed to protect. She also disputes the policyholders' assertion that the Commonwealth Court does not have jurisdiction over their claims against PMM. Finally, the Commissioner urges that even if Burford abstention is inappropriate, other principles (Colorado River abstention[4] and general principles of comity) dictate abstention.
 
 E.
 
 18
 Defendant-Appellee Peat Marwick argues that the judgment of the district court should be affirmed, but on different grounds than were used by that court. In essence, PMM seeks to turn the Burford dismissal into a dismissal on the merits. PMM argues, although the district court did not so hold, that the absence of privity between the policyholders and PMM is fatal to the plaintiffs' complaint, that there is no proximate causation by PMM of the tort injuries alleged, that the civil RICO count fails properly to state a claim, and that the policyholders' claims are time-barred. All of these substantive defenses bypass the issue upon which the district court decided the case, and ask this court to review on the merits a case that was decided only on abstention grounds below.
 
 II.
 
 19
 In reviewing a district court's abstention under Burford, the underlying legal questions are subject to plenary review, although the decision to abstain is reviewed for abuse of discretion. See Ayers v. Philadelphia Housing Authority, 908 F.2d 1184, 1188 (3rd Cir.1990). The parties' dispute over the standard of review stems from the fact that this court has at times stated merely that the standard is abuse of discretion. See Lac D'Amiante du Quebec v. American Home Assurance Co., 864 F.2d 1033, 1048 & n. 18 (3rd Cir.1988); Felmeister v. Office of Attorney Ethics, 856 F.2d 529, 534 n. 5 (3rd Cir.1988). We have also held, however, that
 
 
 20
 [a] district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements.... Within these constraints, determination whether the exceptional circumstances required for abstention exist is left to the district court, and will be set aside on review only if the district court has abused its discretion.
 
 
 21
 United Services Auto. Ass'n v. Muir, 792 F.2d 356, 361 (3rd Cir.1986) (emphasis added). The determination of whether this case falls in the area within which the district court may exercise discretion is therefore a matter of law, reviewable on a plenary basis. Only if we determine that the case falls within this range will we apply an abuse of discretion standard in reviewing the district court's decision to abstain.
 
 III.
 
 22
 Burford abstention doctrine was first announced by the Supreme Court in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In that case, Sun Oil challenged an order of the Texas Railroad Commission granting Burford a permit to drill four oil wells on a plot of land in East Texas. The Supreme Court held that the federal district court should have dismissed the case, because Texas had established a complex state administrative mechanism to deal with the complicated issues involved in local oil drilling regulation. Moreover, Texas had centralized judicial review in a single state district court, which was well equipped to handle oil and gas issues consistently, which would be of great benefit to the state and national economies. Accordingly, Burford limited interference by the lower federal courts in determinations of inherently local matters made by state courts pursuant to a complex state regulatory scheme. The Supreme Court has recently summarized its Burford doctrine as follows:
 
 
 23
 Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."
 
 
 24
 New Orleans Public Service, Inc. v. Council of New Orleans ("NOPSI"), 491 U.S. 350, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (citation omitted).[5] It is the second prong of Burford abstention that is at issue here.
 
 
 25
 Pennsylvania's regulation of insolvent insurance companies through the Commonwealth Court and state receivership laws provides a framework into which it may at times be inappropriate for a federal court to step, where an insolvent insurer or a creditor is a party.[6] In such cases, abstention may well be appropriate. On the other hand,
 
 
 26
 a district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements.
 
 
 27
 United Services Auto Ass'n v. Muir, 792 F.2d 356, 361 (3rd Cir.1986). For the reasons discussed below, we are not persuaded that this case fits the traditional Burford abstention criteria. Indeed, the district court itself seems to have recognized this fact. See Dist.Ct.Op., 736 F.Supp. at 645.[7]
 
 
 28
 In our view, Burford abstention may be ordered in insurer insolvency cases only when one of the parties to the action in which the federal court abstains is the insolvent insurer or its receiver, trustee, officers, and the like. Here, by contrast, the defendant is PMM--a third party that does not fall into any of these categories (and against whom the insurer itself, or now its rehabilitator, also allegedly has claims for damages). This third party's connection to the state regulatory mechanism (governing insolvency proceedings) that Burford abstention is designed to protect, is simply too attenuated to justify renunciation of a federal court's obligation to exercise the jurisdiction granted to it by Congress.
 
 
 29
 The district court in this case has ordered Burford abstention and abstained from exercising its own jurisdiction even though the abstention decreed extended the Burford doctrine beyond the scope for which it was intended. In so doing, the district court violated the longstanding principle that "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred" upon them. NOPSI, 109 S.Ct. at 2512. The Commissioner and PMM have cited no cases in which a federal court has abstained under Burford in an action for damages where the defendant was not the insolvent insurer itself, or its receiver, corporate parent, or officers.
 
 
 30
 In striking down a district court's exercise of Burford abstention, the Supreme Court in NOPSI reminded the lower federal courts that it has
 
 
 31
 carefully defined ... the areas in which such "abstention" is permissible, and it remains "the exception not the rule." ... [T]he federal courts' obligation to adjudicate claims within their jurisdiction is "virtually unflagging."
 
 
 32
 109 S.Ct. at 2513 (citations omitted).
 
 IV.
 
 33
 The Supreme Court's language in NOPSI suggests two further criteria for determining the appropriateness of an application of Burford abstention, both of which are absent in this case. First, the Court stated that Burford may apply "when timely and adequate state court review is available." 109 S.Ct. at 2514. As discussed further in part V. infra, the Commonwealth Court does not appear to have jurisdiction over the policyholders' claims, so that timely and adequate state court review may well not be available.
 
 
 34
 Secondly, the Supreme Court stated, admittedly in dictum, that Burford abstention applies to "a federal court sitting in equity." Id. (emphasis added). Without reading too much into this dictum, we believe, as noted below, that NOPSI generally cautions lower federal courts not to extend Burford abstention beyond proper bounds. Here, unlike Burford and the other Supreme Court cases involving Burford doctrine, the action was at law, not in equity, and sought monetary damages. Nonetheless, the Commissioner argues that "Burford abstention is equally applicable at law or in equity," see Brief of Intervenor-Appellee at 27-29. In support of this claim, she relies on two cases--Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co., 864 F.2d 1033 (3rd Cir.1988) ("LAQ ") and Brandenburg v. Seidel, 859 F.2d 1179 (4th Cir.1988). Neither of these cases is apposite to the situation confronting us in the instant case.
 
 
 35
 In LAQ we noted that, although Burford abstention was at one time believed to apply only to actions in equity,
 
 
 36
 the distinction between legal and equitable relief is no longer important in the abstention context, [and so] we conclude that Burford abstention is appropriate in cases seeking declaratory relief.
 
 
 37
 864 F.2d at 1045. LAQ, however, predated NOPSI, and the Supreme Court in NOPSI has given no indication that the distinction between legal and equitable relief has been diluted. Furthermore, all that the above language in LAQ holds is that Burford may be extended to cases seeking declaratory relief--which is in many ways similar to injunctive relief--not that it may be extended to cases for monetary damages. In fact, in a footnote to LAQ, see 864 F.2d at 1045 n. 14, we took pains to distinguish that case from our prior opinion in Baltimore Bank for Cooperatives v. Farmers Cheese Coop., 583 F.2d 104 (3rd Cir.1978). In Baltimore Bank, this court held that
 
 
 38
 [t]raditionally, abstention has been applied only in cases involving equitable relief. The district court, however, ... impermissibly extended abstention to a common law action.
 
 
 39
 583 F.2d at 111. LAQ did not alter the principle established in Baltimore Bank.[8]
 
 
 40
 NOPSI, which provides us with the Supreme Court's most recent discussion of Burford, has been described as
 
 
 41
 a welcome clarification of Burford abstention. NOPSI makes clear that the mere existence of state administrative procedures, or even a complex state administrative apparatus, does not necessarily warrant abstention....
 
 
 42
 NOPSI seems particularly important in light of several recent lower court decisions expansively interpreting Burford abstention. For example, in [LAQ ], the Third Circuit held that a New Jersey federal district court should have abstained because the defendant was the subject of liquidation proceedings in New York state court. The Third Circuit characterized "the central concern" animating Burford as the desire to prevent needless disruption of the state regulatory scheme. But the Supreme Court's subsequent decision in NOPSI indicates that Burford abstention requires more than a desire to avoid disrupting the state regulatory system; [a mere avoidance of disruption rationale] would justify abstention in any instance where a matter was within an administrative body's jurisdiction. Burford abstention requires, among other considerations, that the regulatory system have as a central purpose uniformity to achieve important local interests that would be frustrated by federal court review.
 
 
 43
 E. Chemerinsky, Federal Jurisdiction 111-12 (Supp.1990). It is clear that, after NOPSI, federal courts should be more wary of extending the scope of Burford abstention. Pennsylvania's regulatory scheme governing insurance company insolvencies is not concerned with protecting auditors. Moreover, the policyholders' claims are not against the assets of Mutual Fire. As another federal court has stated in refusing to apply Burford abstention to a suit against an insurance broker by a policyholder of Mutual Fire,
 
 
 44
 this litigation involves much more than a claim by a creditor based on a policy issued by Mutual Fire. Thus, the important [C]ommonwealth policy of interpreting and administering Mutual Fire's policies fairly and equitably is not implicated.
 
 
 45
 Rental Tools Equip. Co. v. Marsh & McLennan, Inc., Civil No. JH-89-491 (D.Md. Mar. 8, 1990), mem. at 2.
 
 
 46
 In addition to LAQ, the Commissioner cites Brandenburg v. Seidel, 859 F.2d 1179 (4th Cir.1988), in support of her position that Burford abstention is appropriate in an action for money damages. In Brandenburg, the Fourth Circuit upheld a district court's Burford abstention in a RICO action by depositors of an insolvent savings and loan association against former officers and directors of the S & L. The Brandenburg court held, first, that continuation of the federal action would interfere with the efforts of the state-appointed receiver to marshal the institution's assets for the benefit of all creditors. See 859 F.2d at 1192. Second, it noted that the damages alleged were due to orders of the state receivership court, and concluded that the federal action was "in effect a collateral attack on the interest-freezing orders issued by the state receivership court." Id. at 1192.
 
 
 47
 In addition to the fact that Brandenburg predates NOPSI, the Fourth Circuit's opinion is distinguishable from the present case in several ways. The primary distinction is that the plaintiffs in Brandenburg sought recovery for damages arising from the defendants' alleged breach of duties owed to the S & L--the insolvent company--not duties owed directly to the plaintiffs, as is alleged here. The significance of this difference is that the plaintiffs' claims in Brandenburg, as the Fourth Circuit indicated in a footnote, were "derivative of the loss [the S & L] itself suffered." 859 F.2d at 1191 n. 15. Here, the plaintiffs specifically allege RICO and tort claims that are not derivative of the losses suffered by Mutual Fire but that are rather independent of the claims Mutual Fire--and hence the Commissioner--have against PMM.
 
 
 48
 A policyholder's damage claims against an auditor for a faulty audit of an insolvent insurer are not the "property" of the insurer's estate. The plaintiffs here rightly insist that at least some of their claims are distinct from the claims Mutual Fire has against PMM.[9] Disputing this point, the Commissioner cites case law suggesting that she, and only she, as the rehabilitator of Mutual Fire, may bring Mutual Fire's claims against PMM. If the injury alleged by the plaintiffs is
 
 
 49
 primarily to the corporation, and is an injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee.
 
 
 50
 In re Western World Funding, Inc., 52 B.R. 743, 775 (Bankr.D.Nev.1985), cited in Brief of Intervenor-Appellee at 38.
 
 
 51
 In this case, however, the plaintiffs' claims are brought against PMM for the alleged breach of duties owed by PMM directly to the plaintiffs, not to Mutual Fire. Such claims, under Pennsylvania law, belong to the policyholders, not to Mutual Fire or the Commissioner. See Kelly v. Overseas Investors, Inc., 18 N.Y.2d 622, 272 N.Y.S.2d 773, 219 N.E.2d 288 (1966) (per curiam) (holding under Pennsylvania law that the Pennsylvania Insurance Commissioner has no standing to assert creditors' claims against defendants who misrepresented company's assets); Kintner v. Connolly, 233 Pa. 5, 81 A. 905 (1911) (holding that receiver of insolvent insurance company cannot assert the creditors' claims for misrepresentation of company's assets that induced the creditors to do business with the company).
 
 
 52
 The Commissioner's characterization of this suit as "an end run around a receiver to reach an asset of [Mutual Fire's] estate," Brief of Intervenor-Appellee at 30, is based on the assumption that the only claims the policyholders have are derivative of Mutual Fire's own claims. The Commissioner's averments to the contrary notwithstanding, the policyholders in their complaint have stated claims against PMM that are not derivative of Mutual Fire's.[10]
 
 
 53
 This court's recent decision in In re Sunrise Securities Litigation, 916 F.2d 874 (3rd Cir.1990) does not require a different conclusion. In Sunrise, which was decided under Florida law, we held that certain claims brought by depositors of an insolvent savings and loan association were derivative, and therefore could not be brought directly by the depositors. The plaintiffs in Sunrise sued the directors, officers, auditors, and outside counsel of the S & L on the theory that the defendants' mismanagement had caused the S & L's insolvency. We held that this claim was common to all the depositors and was therefore a derivative claim that could be asserted only by the receiver (or by the depositors indirectly, in a derivative action). Our holding, however, noted that
 
 
 54
 in substance, the complaint states a claim of injury to [the S & L itself] and it is from this injury that plaintiffs' losses flowed.
 
 
 55
 At 879. "The essence of the complaint," we stated, was that the "defendants ... had mismanaged [the S & L,] rendering [it] insolvent." At 883. The plaintiffs' "fraud claim was premised on conduct that injured the institutions, and plaintiffs' losses [were] incidental to and flow[ed] from that injury." At 884.
 
 
 56
 In the instant case, by contrast, the policyholders do not allege that PMM's actions caused Mutual Fire's insolvency, but rather that PMM wrongfully certified Mutual Fire's financial statements, upon which the policyholders relied to their detriment. In such a case, the policyholders have standing to sue PMM. See Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740 (5th Cir.1989) (policyholder of insolvent insurance company has standing to bring RICO action against agent that wrongfully induced purchase of policy; policyholder's damages arising out of insurer's insolvency are not property of insurer's estate).
 
 
 57
 The policyholders' claims, moreover, do not interfere with the Commissioner's capacity to function as the receiver of Mutual Fire. The Supreme Court has recently reaffirmed the principle that suits to establish the validity of a claim, even against the insolvent company itself, let alone a solvent third party, do not interfere with the functions of a receiver. See Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 109 S.Ct. 1361, 1370, 103 L.Ed.2d 602 (1989) ("[E]stablishing the existence or amount of a claim against an insolvent debtor [does] not interfere with or restrain the receiver's possession of the insolvent's assets or its exclusive control over the distribution of assets to satisfy claims."). In this case, since the policyholders' claims against PMM are not inconsistent with, or in conflict with, Mutual Fire's claims, a suit for monetary damages similarly does not interfere with the receiver's functions.
 
 V.
 
 58
 Even if Brandenburg were read to permit Burford abstention in favor of a state forum in a case such as the instant one (and as previously stated we do not read Brandenburg in that manner), the policyholders argue that the Commonwealth Court does not have jurisdiction to hear their claims. If this is so, then it would clearly be inappropriate to abstain, since the plaintiffs would then be deprived of a forum and of all recourse to have their claims heard on the merits.[11] See NOPSI, 109 S.Ct. at 2514 (Burford abstention can apply only "where timely and adequate state court review is available"); Baltimore Bank, 583 F.2d at 111 (reversing an abstention that would have required "preliminary resort to a forum which cannot afford relief"); Levy v. Lewis, 635 F.2d 960, 967 (2d Cir.1980) (holding abstention inappropriate where claims cannot be raised in state court).
 
 
 59
 The policyholders make a plausible claim that the Commonwealth Court's subject matter jurisdiction is limited to the delinquency (that is, receivership) proceedings alone, and thus would not extend to the policyholders' claims against third parties such as PMM. Indeed, in a decision arising from the Mutual Fire litigation, the Commonwealth Court appears to have interpreted its own jurisdiction under the relevant Pennsylvania statute in a narrow manner, supporting the policyholders' point. See Grode v. Mutual Fire, Marine & Inland, 132 Pa.Cmwlth. 196, 572 A.2d 798, 809-10 (1990) (holding that the Commonwealth Court's jurisdiction "over matters connected to ... implementation of the rehabilitation itself" did not imply jurisdiction over "pending proceedings by or against an estate in rehabilitation").
 
 
 60
 Moreover, the district court apparently recognized this state court jurisdictional problem. The district court noted the policyholders' argument that the Commonwealth Court has no jurisdiction over their claims, and further commented that PMM had made the same jurisdictional argument in one of its briefs in the Commonwealth Court. The district court made no finding--and gave no indication whatsoever--that the policyholders' jurisdictional analysis was wrong.[12] Thus, the district court recognized but failed to resolve the problem that the Commonwealth Court may not have jurisdiction over the claims on which the district court abstained.
 
 
 61
 While we recognize the apparent force of the policyholders' argument, we need not, and do not, resolve this question of Pennsylvania state court jurisdiction. In light of our conclusion that Burford abstention is inappropriate for the other reasons stated above, it would be inappropriate as well as unnecessary to express an opinion in the first instance on a state court jurisdictional question that is not essential to the outcome of the case before us.
 
 VI.
 
 62
 The district court relied only on Burford abstention in its opinion dismissing the case. The Commissioner nonetheless argues that Colorado River abstention[13] would be appropriate if we find that Burford abstention does not apply. We can affirm a correct decision of a district court on a ground different than that relied upon by the district court. See PAAC v. Rizzo, 502 F.2d 306, 308 n. 1 (3rd Cir.1974). We will therefore consider the Colorado River abstention argument, although it was not a basis for the district court's decision.
 
 
 63
 The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action. See, e.g., McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 504-505, 54 L.Ed. 762 (1910); Stanton v. Embrey, 93 U.S. 548, 554, 23 L.Ed. 983 (1877).
 
 
 64
 In a 1942 decision,[14] the Supreme Court suggested that there may be circumstances in which a federal court may defer to concurrent state court proceedings addressing the same issue. However, in Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and subsequently in Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983), the Supreme Court clarified that abstention in deference to simultaneous state court proceedings is permissible only in exceptional and narrow situations.[15] As the Supreme Court stated in Colorado River, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." 424 U.S. at 818, 96 S.Ct. at 1246. Moreover, in Moses H. Cone, the Court made it clear that Colorado River abstention applies only in clear and exceptional cases, "with the balance heavily weighted in favor of the exercise of jurisdiction." 460 U.S. at 16, 103 S.Ct. at 937.
 
 
 65
 In Colorado River, the Court reemphasized that in general "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court," 424 U.S. at 817, 96 S.Ct. at 1246; but it permitted abstention in exceptional circumstances on grounds of "wise judicial administration," 424 U.S. at 817, 96 S.Ct. at 1246. One factor the Court cited in Colorado River to determine whether abstention applied is whether the state and federal courts both seek to exercise jurisdiction over the same res. Here, as we have noted, the policyholders' claims are distinct from the claims of the Commissioner on behalf of Mutual Fire. Although both seek damages from PMM, there is no theoretical obstacle to both actions proceeding independently. The policyholders do not seek to obtain any funds either due to or in the possession of Mutual Fire. Therefore, while certain issues to be litigated in the policyholders' federal claim may be identical to issues that have been or will be raised by the Commissioner in state court, the lack of identity of all issues necessarily precludes Colorado River abstention. See Complaint of Bankers Trust Co. v. Chatterjee, 636 F.2d 37 (3rd Cir.1980) (holding deference under Colorado River inappropriate when the two proceedings are not "truly duplicative").[16] Hence, the Commissioner's claim that Colorado River provides a basis for dismissal of the policyholders' action in federal court must fail.[17]
 
 VII.
 
 66
 We now turn briefly to PMM's claims that the plaintiffs' amended complaint fails to state a cause of action and is time barred. We note, first of all, that the district court did not reach or address either of these issues, as it dismissed the claim solely on Burford abstention grounds.[18] The threshold question we confront, then, is whether we may consider PMM's claims on appeal.
 
 
 67
 In asking us to hold that the policyholders have failed to state a cause of action or that their claims are time-barred, PMM seeks, in essence, to convert an order of Burford abstention into a decision on the merits.[19] Such a decision would create a preclusive effect in favor of PMM. Burford abstention alone, by contrast, ordinarily requires a dismissal without prejudice, so that the relevant state forum in whose favor the district court abstains may consider the claims. See Brandwein v. California Board of Osteopathic Examiners, 708 F.2d 1466, 1475 (9th Cir.1983); DuBroff v. DuBroff, 833 F.2d 557, 563 (5th Cir.1987); Central Power and Light Co. v. P.U.C., 592 F.2d 234, 236 n. 2 (5th Cir.1979).
 
 
 68
 The district court did not rule on PMM's motion to dismiss, and thus did not decide any of PMM's substantive defenses. Nor did PMM cross appeal from the district court's order of dismissal under Burford which granted the Commissioner's motion. Whether or not PMM could have cross appealed from the district court's dismissal order, the Supreme Court has described the rights of an appellee who does not cross appeal as follows:
 
 
 69
 Without a cross-appeal, an appellee may "urge in support of a decree any matter appearing in the record although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." ... What he may not do in the absence of a cross-appeal is to "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below.
 
 
 70
 Morley Constr. Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325, 327-328, 81 L.Ed. 593 (1937) (citations omitted).
 
 
 71
 We regard PMM's arguments as arguments which seek to have us expand the holding of the district court in PMM's favor. Its effort to have this court declare that the complaint was time barred or failed to state a claim would, if successful, clearly expand PMM's rights and restrict the rights of the policyholders through claim or issue preclusion. Moreover, and of substantial importance to us, we have not had the benefit of the district court's consideration or analysis of these claims, which might very well be fact-sensitive. PMM is therefore barred from raising these issues before us now.[20]
 
 VIII. Conclusion
 
 72
 We hold that the district court erred in its order of abstention predicated on Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). We further hold that there is no basis for abstention under Colorado River, for the reasons discussed in Part VI, supra. Finally, we have held without discussion of the merits of each claim, that PMM's substantive defenses are barred as they are not properly before us on appeal.
 
 
 73
 We will therefore vacate the order of the district court which dismissed the policyholders' Amended Complaint and which denied as moot their motion for preliminary and permanent injunction. We will remand the case for further proceedings consistent with this opinion.
 
 
 74
 MANSMANN, Circuit Judge, concurring.
 
 
 75
 I concur in the result reached by the majority but write separately because I do not join the majority opinion in Part IV. I, too, would hold Burford abstention inappropriate here but on alternative grounds. The plaintiffs in this federal action are not identical to the plaintiffs in the state action and further, in contrast to the Commissioner's state action on behalf of Mutual Fire and its policyholders, in this action the plaintiffs have alleged direct injury by PMM. Because I believe that these reasons alone would suffice to vacate the district court's opinion, I would not decide further issues not necessary to our disposition.
 
 
 76
 Thus, we need not today address the difficult question of whether a federal court may abstain in an action for legal damages. I do not share the majority's conviction that this issue has been definitively determined by the Supreme Court or by our court. The majority reads New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("NOPSI "), to limit the applicability of Burford abstention to a federal court sitting in equity, and therefore to implicitly reject the language of LAQ questioning for jurisdictional purposes the distinction between legal and equitable relief. While some of the Supreme Court's language may suggest that Burford abstention is available where federal courts exercise discretionary equitable jurisdiction, see NOPSI, 109 S.Ct. at 2513, the Court was not called upon to address the application of abstention to legal actions in NOPSI. See NOPSI, 109 S.Ct. at 2511 (suit for injunctive and declaratory relief). I do not read NOPSI to signify a broader holding than that required or expressed.
 
 
 77
 Nor do I read NOPSI to address the issue with respect to the contemporary viability of the distinction between legal and equitable actions raised in Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co., 864 F.2d 1033 (3d Cir.1988) ("LAQ "). In LAQ we noted that the Supreme Court had "unequivocally moved away from the distinction between legal and equitable relief with respect to its other abstention doctrines". LAQ, 864 F.2d at 1044 (citations omitted). While our holding in LAQ did identify the nature of the action as one for declaratory relief outside the "traditional boundaries of equity jurisdiction," id. at 1045, we noted that declaratory relief is not a common law action and that our decision was not inconsistent with Baltimore Bank for Cooperatives v. Farmers Cheese Coop., 583 F.2d 104, 111 (3d Cir.1978). LAQ, 864 F.2d at 1045 n. 14.[1]
 
 
 78
 The majority's rendition of our holding in Baltimore Bank is incomplete. Baltimore Bank held primarily that none of the considerations required for Burford abstention were present: no special expertise or competence of the Milk Marketing Board was required, no challenge to the authority, policy, or regulations of the Milk Marketing Board was advanced and no constitutional issue raised. Moreover, we determined that the relevant state statute provided no relief for the plaintiff in that case. To emphasize these points we reiterated that the plaintiff's claim was concerned "with a[n] ordinary suit in assumpsit for goods sold and delivered." Baltimore Bank, 583 F.2d at 110.
 
 
 79
 I would rely on Baltimore Bank, therefore, for the proposition that Burford abstention is inappropriate where the state forum is not authorized by statute to provide the relief requested by the plaintiffs. Absent what I view to be a definitive ruling and believing that we should hesitate to make sweeping pronouncements on difficult questions when not inescapably called upon to do so, I would not reach the question of whether Burford abstention is restricted to equitable jurisdiction; rather, I would affirm for the reasons articulated above.
 
 
 
 [1]
 See 40 Pa.Stat.Ann. Sec. 221.15 et seq. (Purdon's); infra note 3
 
 
 [2]
 The district court did not rule on PMM's motion to dismiss
 
 
 [3]
 Under 40 Pa.Stat.Ann. Sec. 221.3, "receiver" is defined to include "rehabilitator." Commissioner Constance B. Foster has succeeded Commissioner George F. Grode as rehabilitator of Mutual Fire
 
 
 [4]
 See Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)
 
 
 [5]
 In NOPSI an electric utility sought declaratory and injunctive relief in federal court from a local ratemaking body's order partially denying the utility's rate increase request. The utility argued that the order was preempted by federal law. The Supreme Court held that the district court erred in abstaining under Burford, because the utility's preemption claim could be resolved without undue intrusion into state governmental processes
 
 
 [6]
 For purposes of our analysis of Burford abstention we assume, without deciding, that regulation of insolvency and rehabilitation proceedings of insurance companies can provide the relevant "complex regulatory scheme" or "coherent policy with respect to a matter of substantial public concern" that are among the prerequisites for invoking Burford abstention. As we stated in Lac D'Amiante du Quebec v. American Home Assurance Co., 864 F.2d 1033, 1039 n. 8 (3rd Cir.1988), however,
 the Supreme Court has narrowly interpreted what constitutes the "business of insurance" within the meaning of the McCarran-Ferguson Act.... This narrow construction creates a question whether state regulation of insurer insolvencies constitutes regulation of the business of insurance within the meaning of the Act.
 (Citation omitted.) See also Dist.Ct.Op., 736 F.Supp. at 643 n. 5. Because we conclude that other prerequisites for Burford abstention in this case are lacking, we need not decide whether Pennsylvania's regulation of insurance company insolvencies falls within the Supreme Court's interpretation of the "business of insurance."
 
 
 [7]
 Referring to the most recent case in which we held Burford abstention appropriate, Lac D'Amiante du Quebec, Ltee. v. American Home Assurance Co., 864 F.2d 1033 (3rd Cir.1988), the district court conceded that "[t]he case before this court ... is at least one step beyond the facts of [Lac D'Amiante ]."
 
 
 [8]
 Indeed, under our Internal Operating Procedures, the LAQ panel could not have overruled the holding of a prior published opinion in this Circuit. See 3rd Cir. IOP Chapter 9.1 (formerly Chapter 8.C)
 
 
 [9]
 At oral argument, counsel for the policyholders described the differences between the elements or measure of damages in the instant case and in the Commissioner's action as follows:
 The types of damages that are asserted in this class action are: for premiums paid for worthless insurance policies; for losses that have been paid by members of the class because they don't have any insurance; for exposure to future losses because they don't have any insurance; and for consequential damages to their business and property; and some class members, we understand, have actually been driven out of business.... Those consequential damages, for example, are not recoverable by any of the policyholders in their capacity as creditors of Mutual Fire's estate.... Another item of damages is interest on the amounts paid.... The plan of rehabilitation in the receivership proceeding specifically precludes any payment or any right to recover interest that would otherwise be due.
 
 
 [10]
 Indeed, there is no allegation or suggestion in this case that PMM could not satisfy two judgments if, hypothetically, the policyholders and the Commissioner were both successful in their respective actions against PMM
 
 
 [11]
 We recognize that the Supreme Court, in a decision this past summer, resolved the question of whether a state court of general jurisdiction could exercise jurisdiction over a RICO cause of action. See Tafflin v. Levitt, --- U.S. ----, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (state courts have concurrent jurisdiction over RICO claims). Here, however, the parties raise a different issue than that in Tafflin--whether the Pennsylvania Commonwealth Court, a court of statutorily limited jurisdiction, see 42 Pa.Cons.Stat.Ann. Sec. 761 (Purdon's Supp.1990), may exercise jurisdiction over the plaintiffs' claims against PMM
 
 
 [12]
 As was also noted in the district court opinion, even if there were Commonwealth Court jurisdiction over the policyholders' claims against PMM, a conflict of interest may inhere in any attempt by the Commissioner to press those claims, since the claims raise the issue of the complicity of Mutual Fire's management, in whose shoes the Commissioner now stands. This intriguing issue is one which we need not reach in the instant appeal
 
 
 [13]
 See Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In Colorado River, the United States sued numerous defendants in federal district court for a declaration of water rights. One of the defendants sought to make the United States a party to a state court proceeding concerning the same water rights. The Supreme Court held that, although Burford did not strictly apply, in truly exceptional circumstances federal courts may abstain out of deference to parallel state court proceedings involving the identical issue
 
 
 [14]
 See Brillhart v. Excess Insurance Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)
 
 
 [15]
 See generally E. Chemerinsky, Federal Jurisdiction Sec. 14.2 (1989)
 
 
 [16]
 Although we have not resolved the question as to whether Commonwealth Court jurisdiction over the policyholders' claims exists, see supra part V, we observe that there can be no possible basis for abstaining if the state court to which the federal court defers lacks jurisdiction over the claim. If the policyholders' claims are not subject to review in a state forum, there can be no "parallel" state court litigation on the basis of which a federal court could exercise Colorado River abstention
 
 
 [17]
 The Commissioner's assertion that "principles of comity" require dismissal is equally meritless. Comity is one of the grounds upon which abstention doctrines are based, but where, as here, abstention doctrine is inapplicable, comity is not itself an independent basis for abstention. Moreover, the cases cited by the Commissioner, Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935), and Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871 (1923), pertain to conflicts between state and federal courts over the res of an insolvent company. Here, as we have noted, the policyholders' claims are not the property of Mutual Fire
 
 
 [18]
 See 736 F.Supp. at 646 (granting Commissioner's motion to dismiss). The district court's opinion refers to PMM's defenses as "irrelevant to the larger issue involved, which is [whether abstention applies]." 736 F.Supp. at 645
 
 
 [19]
 The district court's order, which was predicated on Burford abstention (see 736 F.Supp. 643), granting the Commissioner's motion to dismiss reads:
 And now, this 9th day of May, 1990, having considered the Motion to Dismiss filed by the Insurance Commissioner of the Commonwealth of Pennsylvania, and Plaintiff's Response, IT IS ORDERED that:
 
 
 [1]
 The Insurance Commissioner's Motion to Dismiss is GRANTED, and:
 
 
 [2]
 Plaintiff's Motion for a Preliminary and Permanent Injunction is DENIED, as moot
 
 
 [736]
 F.Supp. at 646
 
 
 [20]
 All three parties have presented to this court arguments addressing issues not presently before us on appeal, including substantive issues of RICO law, the sufficiency of pleadings, timeliness, and privity. As we have determined that the district court erred in dismissing this case on Burford abstention grounds, the parties will have the opportunity to raise all appropriate issues before the district court on remand. We note, furthermore, that the Commissioner has intervened in this case only for the purpose of filing the motion to dismiss with which we have dealt here. We express no opinion as to her further participation in this case upon remand. That decision will be for the district court to make
 
 
 [1]
 The majority asserts that LAQ did not alter the principle it asserts we established in Baltimore Bank, namely that Burford abstention is unavailable in actions for legal damages. At 272. I do not agree because I read Baltimore Bank differently